## THE STATE v. NADAL.

1. **Bigamy:** MARRIAGE IN OTHER STATE: COHABITATION IN IOWA. Under § 4009 of the Code, one who contracts a bigamous marriage in another state, and cohabits with the person so married in this state, is, by reason of such cohabitation, guilty of bigamy in this state, no matter how brief may be the sojourn of the parties in the state where they are married.

2. ————: WANT OF CHASTITY TO IMPEACH CREDIBILITY OF WITNESSES. A jury may well believe the testimony of the prosecuting witness in a case of bigamy, though the evidence raises a doubt as to her chastity, rather than the testimony of defendant, who admits that he is a debauchee.

3. ————: EVIDENCE: CHASTITY OF PROSECUTING WITNESS. The character for chastity of the prosecuting witness (the bigamous wife of defendant) in a bigamy case, is immaterial to the issue, and incompetent for any purpose.

4. ————: ————: ADMISSIONS BY DEFENDANT. In a prosecution for bigamy, admissions by defendant of the bigamous marriage, and of cohabitation pursuant thereto, are admissible to corroborate other testimony, though not sufficient of themselves to warrant a conviction.

5. ————: ————: PROOF OF MARRIAGE. In such a case, the testimony of the bigamous wife to the fact of the bigamous marriage, when supported by evidence of cohabitation pursuant thereto, is sufficient, unless over-

come by contradictory testimony, to establish the fact of such marriage; —following cases cited in opinion.

6. **Instructions**: PROPER SUBJECTS OF. Matters of dispute arising upon the law or the evidence are not issues upon which the court ought specifically to instruct the jury.

7. **Bigamy**: EVIDENCE: PLACE OF MARRIAGE. In a prosecution for bigamy, the allegation in the indictment of the place of the bigamous marriage, when not essential as a jurisdictional matter, nor as establishing the specific character of the offense, need not be proved as laid.

8. ———: ———: CONTRACT OF MARRIAGE. Where in such case the bigamous marriage is proved by the evidence of one of the parties and the admissions of the other, by continued cohabitation and by recognition of the marriage relation, no more specific proof of the *contract* of marriage is necessary.

9. ———: ———: MARRIAGE IN OTHER STATE. In such case, if the bigamous marriage was contracted in another state, it is enough if the evidence shows that it was sufficient in form to be valid under the laws of this state, in the absence of proof that it was invalid for informality in the state where it was contracted. (Compare *State v. Wilson*, 22 Iowa, 364.)

10. **New Trial**: ABSENT WITNESSES: CUMULATIVE EVIDENCE. A new trial should not be granted for the purpose of procuring witnesses, when it appears that the testimony which they would give would only be cumulative.

*Appeal from Madison District Court.*

MONDAY, OCTOBER 11.

DEFENDANT was indicted for bigamy, and, upon conviction, was sentenced to the penitentiary for two years and six months. He now appeals to this court.

*Ruby & Wilkin*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

BECK, J.—I. The objections to the judgment of conviction complained of by defendant will be considered in the order of their discussion in the printed arguments of counsel.

The statute defining the crime of bigamy (Code, § 4009)

is in the following language: "If any person who has a former husband or wife living marry another person, or continue to cohabit with such second husband or wife in this state, he or she * * * is guilty of bigamy."

1. BIGAMY: marriage in other state: cohabitation in Iowa.

The district court, in substance, instructed the jury that if defendant and Mrs. Loftus, the woman with whom he contracted the unlawful marriage, within the time limited by the statute for the indictment of one charged with bigamy, lived and cohabited with each other in Madison county, where the indictment was found, the jury were authorized to find him guilty. Counsel object to this instruction on the ground that the cohabitation contemplated by the statute "must be persisted in" or be of a continuous character in the county, or the parties must have cohabited together after entering such marriage relation in Missouri, (where the unlawful marriage was celebrated,) or some other place, and then continued such cohabitation in the county." Counsel base their position upon the language of the statute above quoted, insisting that its meaning is in accord therewith. We are clear in the opinion that the statute will bear no such interpretation. The purpose of the statute is to define a crime committed by marrying within the state, or by cohabiting under an unlawful and void marriage celebrated without the state. Where the marriage is entered into without the state, the criminal act could not be punished here, for the reason that it was not committed in the state; so the law provides that cohabitation after the void act constitutes bigamy. The words "to cohabit" mean "to live together." As soon as a husband and wife are married, unless they live separately in fact, they commence to live together, in contemplation of law. Therefore, upon the celebration of the Missouri marriage, cohabitation began, and when the parties came to Iowa, however brief their sojourn may have been in Missouri, it continued here. The letter and the spirit of the statute declare that cohabitation in this state, under a void

marriage in another state, is a crime. The courts will not draw such subtle distinctions as are made by counsel, for the purpose of shielding the violaters of the law and contemners of good morals.

II. It is next insisted that the evidence fails to establish the marriage of defendant and Mrs. Loftus. She testifies positively and clearly to the marriage in St. Joseph, Missouri. Their cohabitation is admitted by defendant without hesitation and without a blush. He recognized her as his wife to his business associates; introduced her into good society—church society, to the governor of a state, to all—as his wife. He visited her parents with her, and received visits at his house from them, while she was discharging the duties of a wife, all the time recognizing her as such. He wrote numerous letters acknowledging the marriage relation. In short, no husband, by his acts, could give more full recognition of the marriage relation than he did for about four years and a half. But he denies the marriage in his testimony, and, while admitting the cohabitation, and the fact of his recognition of the woman as his wife, without trepidation or confusion, declares that she was only his mistress, and, for business and social reasons and advantages, he recognized her as his wife. He insists that she is unworthy of belief, because she has a bad reputation for chastity, and introduces witnesses to so testify; claiming that his own evidence must be accepted, and hers rejected. Thus, with characteristic effrontery, confessing his own wickedness and shame, he pretends to credibility, while attempting to brand his victim with falsehood by reason of practices and reputation which, even if his charges be true, are better than his own. He claims that her reputation is bad; some witnesses so testify, others say to the contrary. His reputation is shown to be bad; no witness testifies that it is good. He confesses that he is a debauchee, a frontless hypocrite, and a deceiver of his business associates and acquaintances generally. Of the two, the jury were justified

in accepting her testimony and discarding his. We cannot interfere with the verdict on the ground that it lacks the support of evidence.

III. A witness testified that Mrs. Loftus had occupied, for two or three days, a room at the hotel in Omaha, of which he was clerk, with a man other than defendant. The evidence, on motion, was rightly excluded. If it was intended to show her lewdness, it was incompetent, for defendant would be none the less guilty of bigamy by reason of his victim's want of virtue. It was incompetent to establish her reputation, under familiar rules of evidence. It was not introduced to show that she was the wife of another man. It was not competent for any purpose.

*3. ——: evidence; chastity of prosecuting witness.*

IV. Counsel insist that admissions by the defendant of the void marriage were erroneously admitted. They cite numerous authorities in support of their position, which, however, fall far short of it. They only teach that admissions of the defendant will not alone establish a void marriage, or are not of much weight. The same objection is made as to evidence of cohabitation, with like result as to the authorities. It may be admitted that proof of admissions of marriage or cohabitation will not authorize conviction; but when the evidence shows long recognition by the defendant of the woman as his wife, and actual marriage, it cannot be doubted that proof of admission and cohabitation may be shown. They are circumstances of some weight, which, at least, may be admitted in evidence as corroborative of other testimony.

*4. ——: ——: admissions by defendant.*

V. It is insisted that, to authorize the conviction of defendant, there should have been direct evidence of the fact of marriage other than the testimony of Mrs. Loftus. There is no such rule of law. Counsel cite no authorities supporting their position. In a criminal case involving the fact of marriage, this court has held "that the testimony of either husband or wife, together

*5 ——: ——: proof of marriage.*

with proof of continued cohabitation as husband and wife, raises such a presumption of an actual legal fact as to make it incumbent on the defendant to rebut such presumption." *State v. Wilson*, 22 Iowa, 364; *Kilburn v. Mullen*, Id., 498; *State v. Williams*, 20 Id., 98.

VI. It is urged as a ground of objection that the district court failed to instruct the jury upon the issues of the case. The position is not well taken. The court states the facts alleged in the indictment constituting the crime of which defendant is charged, and in separate instructions presents the law applicable to the different grounds upon which the defense is based. There was really but one issue in the case raised by defendant's plea of not guilty. It involved his guilt or innocence. Matters of dispute arising upon the law or the evidence are not issues which the court ought specifically to present to the jury.

*6. INSTRUC-TIONS: proper subjects of.*

VII. The indictment alleges that the void marriage was celebrated at St. Joseph, Missouri. An instruction, in effect, directs the jury that a finding of marriage anywhere in Missouri would support the allegation of the indictment. The allegation in the indictment of the place of the marriage not being essential as a jurisdictional matter, or as establishing the specific character of the offense, need not be proved as laid. 3 Greenl. Ev., § 12.

*7. BIGAMY: evidence: place of marriage.*

VIII. It is insisted that one or more instructions should not have been given, for the reason that there was no evidence to which they are applicable. It is sufficient to say that the objection is not in accord with the facts. A statement of one of these objections will illustrate the weakness of all. The court in one instruction informed the jury that "a legal marriage is a contract between two parties who at the time of the making of the contract have a legal right to enter into the marriage relation with each other," and that "no special form of words or ceremony is necessary to make the marriage legal." This instruction is

*8. ——: ——: contract of marriage.*

objected to on the ground, expressing it in counsel's own language, that "there was not an item of evidence as to a *contract* of marriage." If the marriage be proved, the *contract* is established. The marriage was proved by the direct evidence of Mrs. Loftus, by long cohabitation, by recognition of the marriage relation, by admissions, and by other numerous circumstances; yet counsel gravely assert that "there was not an item of evidence as to the contract of marriage."

IX. Counsel insist that the state was required to prove that the void marriage was regularly solemnized under the laws of Missouri. Their position is not good. The evidence shows a marriage sufficient in form to be valid under the laws of this state. Under a familiar doctrine recognized by this court, in the absence of proof to the contrary, the law of Missouri pertaining to form and validity of marriages will be presumed to be the same as that of this state. This court has held that, upon an indictment for adultery, a marriage solemnized in Canada need not be proved to have been celebrated in accord with the laws prevailing there. *State v. Wilson*, 22 Iowa, 364. The district court's rulings on instructions given and refused were in harmony with the foregoing views, and therefore correct.

*9.——:——: marriage in other state.*

X. The defendant based a motion for a new trial on the ground that, through the fault of one authorized by the sheriff to serve a subpœna, certain witnesses were not in attendance at the court. The names of the witnesses were not written in the subpœna,—indeed, they were not known to defendant, but he gave the person authorized to serve it directions which would enable him to ascertain their names, which he was directed to insert in it. The facts show that defendant hardly exercised the care demanded to secure the attendance of the witnesses. But if this consideration be waived, it clearly appears that the testimony of these witnesses was simply cumulative, and that, had it been given, the verdict ought to have been as actually rendered by the jury.

*10. NEW trial: absent witnesses: cumulative evidence.*

The evidence amply supported the conviction, and the defendant richly merits the punishment fixed by the sentence. His offense is heinous, and was perpetrated by. falsehood, deception, hypocrisy, and the abuse of confidence of those who trusted him. He cannot plead ignorance, or even the poor excuse of the influence of vicious associates. He seems to be a capable business man, which is attested by the fact that he was appointed a state agent of an insurance company, or something of that kind. He was an elocutionist, and traveled as a "professor" of the elocutionary art. He associated with gentlemen; among those named as an acquaintance, if not a friend, is the governor of a state. He was a member of a church, and attended its services. All this while, according to his own explanation, he had a lawful wife living, and at the same time was keeping a mistress. There is nothing in his character or history disclosed by the record recommending him to mercy. It is to be hoped that after realizing, in two and a half years' imprisonment in the penitentiary, that "the way of the transgressor is hard," he will then return to society a wiser and a better man; and that his punishment may serve as a warning to others who may be tempted to pursue his way of life.

AFFIRMED.