## STATE, Respondent, v. G. MARTINEZ, *alias* MIKE MARTIN, *alias* MIKE MARTINO, Appellant.

[250 Pac. 239.]

STATUTES—REPEAL BY IMPLICATION—CRIMINAL LAW—BIGAMY—WIT-
NESSES—EVIDENCE—ADMISSION OF REBUTTAL EVIDENCE—CORREC-
TION OF SENTENCE.

1. In arriving at legislative intent of act alleged to have impliedly repealed or superseded another, nature of several acts involved with their history as well as objects and purposes sought to be attained are to be considered.

2. C. S., sec. 8283, forbidding polygamy, did not repeal Rev. Stats., 1887, sec. 6805, defining bigamy, both polygamy and bigamy having been known to the constitution, as shown by art. 1, sec. 4, and art. 6, sec. 3.

3. Repeals by implication are not favored and will not be indulged in, if there is any other reasonable construction.

4. Rev. Stats., 1887, sec. 6805, defining bigamy, was not repealed by Rev. Codes 1909, or Comp. Stats. 1919, although not included therein; Rev. Codes 1909, sec. 17, repealing laws not expressly continued, applying only to laws which were provided for.

5. Evidence *held* sufficient to support verdict for bigamy, under statutory rules in C. S., secs. 4593, 8953, defining necessary proof.

6. Failure to object to introduction of affidavit used as standard of comparison with defendant's signature amounted to practical admission of genuineness or, at least, waiver of right to object.

7. In bigamy prosecution, evidence of justice of the peace of another state as to performing marriage ceremony was *prima facie* showing of justice's authority.

8. In bigamy prosecution, validity of ceremonial marriage will be presumed in absence of evidence that it was not regular, and law of foreign state, not being shown, will be presumed same as law of this state.

9. Instruction, in bigamy prosecution, that defendant must show divorce or annulment of prior marriage, although not limited to marriage alleged, was not misleading, there being no evidence of any other prior marriage.

10. Police record of finger-prints and signature of defendant's alleged first wife, with testimony that she was alive after second marriage, *held* admissible after identifying signature with that of first marriage certificate.

11. Offer of photograph in evidence, to which objection was overruled, constitutes admission in evidence.

12. In bigamy prosecution, letters said to have been written by alleged first wife were properly admitted on evidence showing person who signed letters also signed first marriage certificate.

13. Evidence, in bigamy prosecution, that alleged first wife went under defendant's name was competent, when considered with other proof of identity.

14. Asking state's witness whether he remembered defendant in bigamy prosecution being under arrest, *held* not prejudicial error, objection to answer being sustained and other evidence not objected to showing arrest.

15. Admission of immaterial testimony relative to nationality of defendant in bigamy prosecution was not prejudicial, where answer was stricken out and rulings indicated immateriality thereof.

16. Under C. S., sec. 8034, defendant, having offered himself as witness, may be cross-examined as to direct examination or connected facts without violating Const., art. 1, sec. 13, providing no person shall be compelled to be witness against himself, expressed also in C. S., sec. 8623.

17. Where defendant in bigamy prosecution testified he never went by alleged name, questions on cross-examination concerning name defendant went under at time of first and second marriages were proper.

18. Questioning defendant in bigamy prosecution on cross-examination relative to one of alleged marriages, *held* not reversible error after refusal to answer on ground that it might be self-incriminating.

19. "Rebutting evidence" is that which is given to explain, repel, counteract or disprove facts given in evidence by adverse party.

20. In bigamy prosecution, questions relative to alleged first marriage intended to repel and disprove defendant's testimony were properly admitted in rebuttal.

21. Admission of rebuttal evidence is largely in discretion of trial court.

22. Sentence for bigamy, under Rev. Stats., 1887, sec. 6805, defining polygamy, will be corrected by supreme court on appeal under authority of C. S., sec. 9086.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. Charles L. Heitman, Judge.

Defendant appeals from judgment of conviction of bigamy. *Modified and affirmed.*

Frank Langley, for Appellant.

Polygamy is defined in C. S., sec. 8283. There is no definition of bigamy in the statutes.

It is conceded that in a civil action the law of a sister state will be presumed to be the same as the law in this state, but that rule does not hold in a criminal action, and the law of the state of Washington must be affirmatively

Publisher's Note.

1. See 25 R. C. L. 959, 1063.
3. See 25 R. C. L. 918.
19. See 10 R. C. L. 936.

See Bigamy, 7 C. J., sec. 1, p. 1157, n. 2; sec. 2, p. 1158, n. 13; sec. 37, p. 1169, n. 82; p. 1170, n. 83, 86; sec. 43, p. 1173, n. 30; sec. 53, p. 1175, n. 69; sec. 55, p. 1176, n. 79 New; sec. 58, p. 1176, n. 95.

Criminal Law, 16 C. J., sec. 1525, p. 742, n. 48; sec. 1536, p. 750, n. 77; sec. 2160, p. 857, n. 57 New; sec. 2185, p. 867, n. 25; p. 868, n. 34; sec. 2218, p. 885, n. 63. 17 C. J., sec. 3654, p. 309, n. 86; sec. 3655, p. 309, n. 90; sec. 3664, p. 321, n. 47; sec. 3666, p. 325, n. 72; sec. 3749, p. 366, n. 60, 61; sec. 3751, p. 368, n. 5.

Evidence, 22 C. J., sec. 10, p. 66, n. 25.

Statutes, 36 Cyc., p. 1071, n. 25; p. 1074, n. 37, 40; p. 1077, n. 41; p. 1114, n. 96; p. 1171, n. 35 New.

Witnesses, 40 Cyc., p. 2510, n. 29; p. 2554, n. 33.

proven. (*People v. Lambert,* 6 Mich. 349, 72 Am. Dec. 49.)

No person can be compelled in a criminal action to be a witness against himself. (C. S., sec. 8623; *State v. Gruber,* 19 Ida. 692, 115 Pac. 1.)

The questions asked on cross-examination were incompetent, irrelevant and immaterial, and not proper cross-examination, and the objections thereto should have been sustained. (C. S., sec. 8034; *State v. Larkins* (on rehearing), 5 Ida. 200, 47 Pac. 945; *State v. Gruber, supra; People v. O'Brien,* 70 Cal. App. 130, 232 Pac. 752.)


A. H. Conner, Attorney General, and John W. Cramer, Assistant, for Respondent.

The terms "bigamy" and "polygamy" are used to denote the same offense. (*Toncray v. Budge,* 14 Ida. 621, 95 Pac. 26; C. S., c. 303, art. 5, sec. 8283; Clark, Criminal Law, 2d ed., 353; *State v. Stewart,* 194 Mo. 345, 112 Am. St. 529, 5 Ann. Cas. 963, 92 S. W. 878.)

The testimony of eye-witnesses of a marriage is sufficient proof of the fact of marriage. (*Dale v. State,* 88 Ga. 552, 15 S. E. 287; *State v. Nadal,* 69 Iowa, 478, 29 N. W. 451; *State v. Hodgskins,* 19 Me. 155, 36 Am. Dec. 742, and note; *Commonwealth v. Hayden,* 163 Mass. 453, 47 Am. St. 468, 40 N. E. 846, 28 L. R. A. 318; *Bird v. Commonwealth,* 21 Gratt. (62 Va.) 800; *Hearne v. State* (Tex. Cr.), 58 S. W. 1009.)

A marriage sufficient in form to be valid under the laws of the state where the offense is prosecuted, though celebrated in another state, will be presumed to be sufficient under the laws of that state, when there is no evidence to the contrary. (*Dale v. State, supra; State v. Nadal, supra; Dumas v. State,* 14 Tex. App. 464, 46 Am. Rep. 241; *Hutchins v. Kimmell,* 31 Mich. 126, 18 Am. Rep. 164.)

Where the evidence is conflicting but there is substantial competent evidence to support the verdict and judgment based thereon, the same will not be disturbed on appeal. (*State v. Brassfield,* 40 Ida. 203, 232 Pac. 1; *State v. Shep-*

*ard,* 39 Ida. 666, 229 Pac. 87; *State v. Bouchard,* 27 Ida. 500, 149 Pac. 464.)

Error cannot be predicated upon the refusal of the lower court to give an advisory instruction to acquit. (*State v. Mason,* 41 Ida. 506, 239 Pac. 733; *State v. Chacon,* 36 Ida. 148, 209 Pac. 889.)

It is not sufficient to show that error was committed but it must be shown that such error was prejudicial to defendant. (C. S., sec. 9191; *State v. Dong Sing,* 35 Ida. 616, 208 Pac. 860; *State v. Poynter,* 34 Ida. 504, 205 Pac. 561, 208 Pac. 871.)

Error, if any, in admitting irrelevant or improper testimony is usually harmless when the fact which is intended to be proved thereby is fully shown by other evidence which was introduced without objection. (*State v. Breyer,* 40 Ida. 324, 232 Pac. 560; *State v. Wilson,* 41 Ida. 616, 243 Pac. 359.)

While proof of a name is not conclusive, it is some evidence of identity. (*State v. Smith,* 129 Iowa, 709, 6 Ann. Cas. 1023, 106 N. W. 187, 4 L. R. A., N. S., 539, and note; *People v. Rolfe,* 61 Cal. 540.)

The extent to which the cross-examination should be allowed to proceed rests largely in the discretion of the trial court. (*State v. Mox Mox,* 28 Ida. 176, 152 Pac. 802; *State v. Quirk,* 101 Minn. 334, 112 N. W. 409; *People v. Wright,* 133 App. Div. 133, 117 N. Y. Supp. 441.)

A very wide latitude should be allowed in the cross-examination of a defendant who takes the stand in his own behalf and denies the commission of the offense. (*State v. Rodgers,* 40 Mont. 248, 106 Pac. 3; *Fissure v. Old Susan Min. Co.,* 22 Utah, 438, 63 Pac. 587.)

Cross-examination is not confined to a categorical review of the matters stated on direct examination, but may be employed as a means to test the truth of the evidence given on direct examination and extended to matters connected with the matters testified to on direct examination or tending to elucidate or to discredit the testimony given. (*State v. Webb,* 6 Ida. 428, 55 Pac. 892; *State v. Mitchell,* 229 Mo.

683, 183 Am. St. 425, 129 S. W. 917; *People v. Gordan,* 103 Cal. 568, 37 Pac. 534; *State v. Gallaher,* 14 Ida. 656, 94 Pac. 581.)

A large discretion is reposed in the trial court with respect to the admission of evidence in rebuttal. (*State v. Wilson, supra; State v. Mushrow,* 32 Ida. 562, 185 Pac. 1075; *State v. Waln,* 14 Ida. 1, 80 Pac. 221.)

TAYLOR, J.—Appellant was convicted upon an information charging the crime of bigamy, alleged to have been committed by marrying one Mary G. Prosper in Coeur d'Alene on October 1, 1923, he having a wife, one Hazel Butler, whom he married in Spokane, Washington, on May 19, 1923, who was living and undivorced at the time of the second marriage. This appeal is from the judgment and an order denying a motion for a new trial.

Appellant's first assignment of error is:

"That the verdict of the jury is contrary to the law in this: That the crime of bigamy is unknown to the law of the State of Idaho, and that, if any crime has been proven in this case, it is the crime of polygamy only."

[1] In arriving at the legislative intent as to an act alleged to have impliedly repealed or superseded another or other statutes, the nature of the several acts involved, including their respective titles, the history of such enactments, the state of the law when the acts were passed, and the history of the times, as well as the objects and purposes sought to be attained, are proper matters for consideration. (*People v. Gibson,* 53 Colo. 231, Ann. Cas. 1914B, 138, 125 Pac. 531.)

"The words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted." (25 R. C. L., p. 959, "Statutes," sec. 215.)

The first statute defining bigamy as a crime, and providing a punishment therefor, was enacted during the first session of the territorial legislature of 1863–64, and reads in part as follows:

"Bigamy consists in having two wives, or two husbands, at one and the same time, knowing that the former husband or wife is still alive." (Idaho Laws, 1st Session, p. 465.)

This provision was re-enacted in 1875 (Idaho Laws, 8th Session, p. 352). The Revised Statutes of 1887, sec. 6805, defined bigamy as follows:

"Every person having a husband or wife living, who marries any other person, . . . . is guilty of bigamy."

As a part of the same chapter, Revised Statutes, sec. 6808, provided:

"Every person who knowingly and wilfully marries the husband or wife of another, in any case in which such husband or wife would be punishable under the provisions of this chapter, is punishable by fine not less than two thousand dollars, or by imprisonment in the Territorial prison not exceeding three years."

The only subject of the cross-reference therein could have been the offense defined as bigamy by Rev. Stats., sec. 6805. Rev. Stats., sec. 6808, had its origin in substance in Idaho Laws, 1st Session, p. 466, sec. 128. This likewise was re-enacted in 1875 (Idaho Laws, 8th Session, p. 353).

Both bigamy and polygamy were known to the constitution (art. 1, sec. 4; art. 6, sec. 3), and bigamy was defined by statute as a crime, although polygamy was not. By an act of the legislature in 1905 entitled, "An act defining the crime of polygamy and providing punishment therefor" (Sess. Laws 1905, p. 293; now C. S., sec. 8283), it is provided:

"Every person who has a husband or wife living who hereafter marries another, whether married or single, and any man who hereafter simultaneously, or on the same day, marries more than one woman, is guilty of polygamy . . . . "

[2] Unless this act of 1905 by implication repealed Rev. Stats., sec. 6805, it is still in effect, for as we shall show, it was not otherwise repealed by either Revised Codes, 1909, or Compiled Laws, 1919, although not carried forward in either of those codifications.

[3]  The rule applicable in this instance is well expressed in Ruling Case Law:

"Repeals by implication are not favored, and will not be indulged if there is any other reasonable construction. . . . .

"The rule of construction in respect to the repeal of statutes by implication is, that the earlier act remains in force, unless the two are manifestly inconsistent with and repugnant to each other, or unless in the later act express notice is taken of the former, plainly indicating an intention to abrogate it. . . . .

"To effect an implied repeal of one statute by another they must both relate to the same subject and have the same object or purpose.  Where there is a difference in the whole purview of two statutes apparently relating to the same subject, the former is not repealed.  Where the evils which an act is designed to remedy are different from those for which a prior act provides the prior act is not repealed." (25 R. C. L., pp. 918–922, "Statutes," secs. 169–171.  See, also, *In re Mitchell,* 121 Cal. 384, 52 Pac. 799; *Malone v. Bosch,* 104 Cal. 680, 38 Pac. 516.)

The word "bigamy" is defined by Sir James A. H. Murray's English Dictionary as follows:

"Marriage with a second wife or husband during the lifetime of the first; the crime of having two wives or husbands at once. . . . .

"*Eccl. Law.*  Re-marriage after the death of a first wife (*or* husband); marriage of, or with, a widow (*or* widower). *Obs.* exc. *Hist.*"

The same authority defines "polygamy" as follows:

"Marriage with several, or more than one, at once; plurality of spouses; the practice or custom according to which one man has several wives (distinctively called *polygyny*), or one woman several husbands (*polyandry*), at the same time. Most commonly used of the former."

It will be observed that one having no husband or wife could not, by marrying, be guilty of bigamy as defined, although punishable for an unnamed crime under Rev. Stats., sec. 6808, to wit: knowingly and wilfully marrying

a bigamist. However, by the act of 1905 a man can be punished, as for the crime of polygamy, for marrying plural wives simultaneously or upon the same day, while the offense of the woman, if such were committed, of marrying two men simultaneously or upon the same day, is not defined as polygamy. We thus find the intention of the legislature, in the adoption of the act of 1905, was to provide punishment for that which, in the minds of the legislature, was polygamy—the polygamous marriage of one man with a plurality of wives—thus indicating that polygamy, as known and understood, was not that which had been so long defined as bigamy.

It must be noticed that a repeal of Rev. Stats., sec. 6805, would of necessity make ineffective Rev. Stats., sec. 6808, which, by its terms, makes the person other than the bigamist knowingly and wilfully contracting such marriage guilty of an offense visited with equal punishment. It is doubtful if incorporating certain elements of bigamy in the definition of polygamy by the act of 1905 would carry with it a plain or any intention to continue the application of the provisions of Rev. Stats., sec. 6808, to the offense of the other party to such marriage. Even so, if the act of 1905 amended likewise the punishment for bigamy, that for the offense of the single party would remain what it was before and different in possible minimum and maximum from that of the other guilty party, the bigamist, a difference not formerly existing and for which to find an implied intention might tax judicial interpretation. If not, then that statute would be rendered nugatory if the bigamy statute were thereby repealed. This doubt contributes its weight against the doubtful intention of an implied repeal of the bigamy statute. In order to declare the legislative intention to repeal the definition of bigamy, it would therefore be necessary to hold that the legislature intended, in an act which contained no repealing clause and made no reference to the section already defining bigamy, to wipe out at one stroke the crime of bigamy, and the offense defined by Rev. Stats.,

sec. 6808, which might be committed by the other contracting party.

Rev. Stats., sec. 7867, carried through both codes and now C. S., sec. 8953, limiting the proof necessary as to either of the marriages "upon a trial for bigamy," is not contended to have been repealed. In fact, no mention of it is made in the briefs. Either this fell with the repeal, if any, of the bigamy statute as useless, or is otherwise still in effect.

We conclude in the face of such doubts and possible and positive effects, which would result from a decision otherwise, that the act of 1905 defining polygamy is neither so in conflict nor inconsistent with, nor repugnant to, the provisions of the Revised Statutes as to bigamy, as to show a plain intention or imply an intention of the legislature to repeal them. (*Kollenberger v. People,* 9 Colo. 233, 11 Pac. 101; *Hughes v. Territory,* 8 Okl. 28, 56 Pac. 708.)

[4] In deciding that Rev. Stats., sec. 6805, was not repealed by the Revised Codes of 1909 or Compiled Laws of 1919, although not included therein, it is unnecessary for us to determine the power of the legislature to adopt a complete code under section 16 of article 3 of the constitution, or the effect of an attempt to adopt such a code. (*Archbold v. Huntington,* 34 Ida. 558, 201 Pac. 1041; *Sanders v. City of Coeur d'Alene,* 27 Ida. 353, 149 Pac. 290.) We need be concerned only with the terms of the repealing clauses of those codes to which we refer, which are, except for the designation of the code, identical. The former reads as follows:

"Sec. 17. No statute law is continued in force because it is consistent with the provisions of the Revised Codes on the same subject, but in all cases provided for therein all statute laws heretofore in force in this State, whether consistent or not with the provisions of the Revised Codes, unless expressly continued in force, are repealed and abrogated."

It is to be noted that by this repealing clause the laws, if any, repealed by such code are only those within the term,

"in all cases provided for therein." Laws not provided for therein which existed at the adoption of the code are not repealed. Nothing being provided therein as to the crime of bigamy, this repealing clause did not repeal the sections of the Revised Statutes defining and punishing bigamy. (*Chadwick v. Tatem,* 9 Mont. 354, 23 Pac. 729.)

[5] We approach the discussion of the evidence with the following statutory rules in mind:

"Upon a trial for bigamy, it is not necessary to prove either of the marriages by the register, certificate, or other record evidence thereof, but the same may be proved by such evidence as is admissible to prove a marriage in other cases; . . . . " (C. S., sec. 8953.)

"Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases." (C. S., sec. 4593.)

We will refer to the alleged marriage to Hazel Butler at Spokane as the "first" marriage, and to the marriage to Mary G. Prosper at Coeur d'Alene as the "second" marriage. Appellant specifies as error insufficiency of the evidence to establish that the defendant "was the groom" in the first marriage. He specifically admitted in open court that "he, the defendant, under the name of Mike Martino, and one Mary G. Prosper, on October first, 1923, duly and legally and in accordance with the laws of the State of Idaho, did contract a marriage at Coeur d'Alene . . . . according to the terms of the marriage license issued to them."

The state offered, and there was received in evidence, on the testimony of C. O. Sowder, auditor and recorder of Kootenai county, that it was such, "an affidavit on application for a marriage license" by "Mike Martino and Mary G. Prosper," in his charge as such. The exhibit was signed by one Mike Martino and Mary G. Prosper, and the verification was by a deputy recorder. It was received in evidence with the distinct statement by counsel for defendant of "no objection." Then followed a colloquy between counsel and

the witness, who stated that defendant, on arraignment, had explained to the district judge, as to his name, that "in Spanish it was Martinez and in English Martino or Martin," and that "the two names were the same name"; whereupon counsel for defendant said, "The defendant admits that the two names are in reality the same name."

The original marriage certificate of the first marriage was produced at the trial, with proof that the groom in that marriage signed the signature, "G. Martinez," appearing thereon; and a photographic copy was introduced in evidence. With the signature on the affidavit as a standard, comparisons were made by expert witnesses on behalf of the state, with the signature, "G. Martinez," on the original certificate of the first marriage, as a means of ascertaining whether or not they were written by the same person. Counsel for defendant made no objection to the use of the signature on the affidavit as a standard of comparison by the handwriting experts for the state. He used it himself as a standard on cross-examination of the state's witnesses, and on examination of his own experts in rebuttal. The state's handwriting experts testified that the two signatures were written by the same person, and the defendant's handwriting experts testified to the contrary. Counsel for both parties treated the signature on the affidavit as genuine throughout the trial. Defendant later testified as a witness in his own behalf, but was not asked whether he signed the affidavit. He stated that his true name was Mike Martino, but that he sometimes went under the name Martinez.

[6] Failure to object to the introduction of the affidavit, or the use of the signature thereon as a standard of comparison, at a time when direct proof of identity of the signature might have been supplied, especially in view of all the circumstances and the fact that counsel for defendant himself used it for the same purpose, amounted to a practical admission of its genuineness, at least a waiver of the right to object, and it is now too late. (*Sanderson v. Osgood*, 52 Vt. 309; 3 Jones on Evidence, 628.)

[7] Appellant contends that the authority of the justice of the peace to perform the first marriage was not proven and will not be presumed. The justice himself testified that he was a justice of the peace, and as such officer performed marriage ceremonies in the state of Washington; and that he performed the marriage ceremony evidenced by the certificate which he produced and of which state's exhibit "G" was a true photographic copy. Eye-witnesses testified to their presence at, and the performance of, the ceremony. This was a *prima facie* showing of authority to perform a marriage ceremony (*State v. Robbins,* 28 N. C. 23, 44 Am. Dec. 64; *Taylor v. State,* 52 Miss. 84; *Commonwealth v. Hayden,* 163 Mass. 453, 47 Am. St. 468, 40 N. E. 846, 28 L. R. A. 318; *State v. Abbey,* 29 Vt. 60, 67 Am. Dec. 754; 38 C. J., p. 1310, sec. 78), and was sufficient in the absence of any evidence tending to rebut it. (*Hayes v. People,* 25 N. Y. 390, 82 Am. Dec. 364.)

[8] Appellant argues that there was no proof that a justice of the peace could perform a lawful marriage ceremony in the state of Washington. While there is some conflict in the decisions of other courts, some holding that in a prosecution for bigamy the state must not only prove a marriage in fact, but a marriage valid under the law of the state in which it took place, the better rule is that the validity of a ceremonial marriage will be presumed in the absence of evidence tending to show that it was not regular and in accordance with law, and that the presumption applicable to civil actions, that the law of a foreign state, not being shown, will be presumed to be the same as the law of this state (*Maloney v. Winston Bros. Co.,* 18 Ida. 740, 763, 111 Pac. 1080), is applicable in a matter where, especially with relation to marriages, the right of parties capable of marriage, being a common right, valid by common law prevailing throughout Christendom, we cannot presume that there is a law of a foreign state prohibiting a marriage which, when shown, would be valid in this state. (1 Wharton on Criminal Evidence, 10th ed., sec. 169; 2 Am. & Eng. Ency. of Law, p. 192; *Dale v. State,* 88 Ga. 552, 15 S. E. 287; *Hut-*

*chins v. Kimmell,* 31 Mich. 126, 18 Am. Rep. 164; *Bird v. Commonwealth,* 21 Gratt. (Va.) 800; *State v. Nadal,* 69 Iowa, 478, 29 N. W. 451.)

[9] Appellant alleges error in an instruction that if the jury found defendant was married before his marriage to Mary G. Prosper, then it was incumbent on defendant to show a divorce or annulment of such prior marriage before he could rely upon such divorce or annulment. Defendant argues that the instruction does not limit prior marriage to marriage to Hazel Butler, as alleged in the information. While it is true that a marriage to anyone other than Hazel Butler would not support a conviction under the information, there was no evidence or intimation of any prior marriage of defendant to anyone other than Hazel Butler, and the jury therefore could not have been misled.

[10] Appellant complains of the overruling of his objections to the admission of state's exhibit ''B.'' This was a police record containing the finger-prints and signature of one Hazel Butler, and the police officer who made it testified that the woman it referred to was alive after the date of the second marriage. Appellant argues that there was no proof that this Hazel Butler was the bride in the first marriage. The state introduced expert testimony that the signatures on exhibit ''B'' and on the certificate of the first marriage were written by the same person. This is substantial evidence of identity.

[11] Appellant contends that state's exhibit ''C,'' a photograph, was never admitted in evidence. He is mistaken. After identifying the photograph, counsel for the state offered it in evidence; defendant's counsel objected; and the court said: ''I overrule the objection.'' This constitutes an admission in evidence. The exhibit was never thereafter withdrawn or stricken from the evidence, although it does appear that there was some subsequent argument as to its admissibility.

[12] Appellant complains of the admission in evidence of three letters said to have been written by Hazel Butler,

arguing that there was no proof that they were genuine. The state introduced evidence tending to prove that the person who signed those letters signed state's exhibit "B" and also the first marriage certificate. State's exhibit "B" was connected up with the woman who lived with defendant, and whom defendant held out as his wife. The letters were therefore properly admitted.

[13] Appellant complains of evidence elicited from one of the state's witnesses on direct examination to the effect that Hazel Butler in 1923 went under the name Martino. Defendant argues that the mere fact that a woman bore the same name as appellant is not competent evidence that she was his wife. It was competent, to be considered by the jury with other evidence, as establishing the identity of defendant as the man who was present and contracted the first marriage, when considered with other proof of the identity of this woman living with him as the one who was present at and contracted that marriage.

[14] Appellant complains of a question in which one of the state's witnesses on direct examination was asked whether he remembered defendant's being under arrest at a certain time. Defendant did not object to the question, but did object to the answer, and the answer was promptly stricken. Other evidence not objected to, and still further evidence brought out by counsel for defendant on cross-examination, showed that defendant was arrested and in jail. The incident will not support an assignment of error.

[15] Appellant alleges error in the overruling of objection to the following question propounded by the prosecutor to one of the state's witnesses: "What did he (defendant) tell you about his nationality, and where he claimed he was from?" The court asked the prosecutor if it was his purpose to show anything about the alleged marriage. The prosecutor replied that he expected to, whereupon the witness answered the question. Counsel for defendant then objected to the answer, and asked that it be stricken out, and the court did so. The rulings of the court sufficiently

indicated to the jury the immateriality of the answer, and the error, if any, was too slight to injuriously affect a substantial right of defendant, and was cured by the ruling. (17 C. J., p. 325, sec. 3666.)

[16] Appellant specifies as error that the state was permitted, in cross-examining him, to ask questions, over his objection, concerning matters not gone into on his direct examination. The provision of article 1, section 13, of the constitution that ''no person shall . . . . be compelled in any criminal case to be a witness against himself,'' expressed also in C. S., sec. 8623, is subject to the rule that one who has voluntarily made himself a witness in his own behalf is subject to the same rules of cross-examination that apply to all other witnesses (*State v. Gruber*, 19 Ida. 692, 115 Pac. 1), and he may be so cross-examined as to any facts stated in his direct examination or connected therewith. (C. S., sec. 8034.)

''The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. . . . . His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.

''If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions. . . . .

''It is elementary that a witness who upon direct examination denies making statements relevant to the issue, may be cross-examined with respect to conduct on his part inconsistent with this denial.'' (*Raffel v. United States*, 271 U. S. 494, 46 Sup. Ct. 566, 70 L. ed. 1054.)

[17] In his direct examination, defendant denied that he was a party to the first marriage, alleged to have taken place May 19, 1923, and testified that he never went by the name of G. Martinez, and that that was his brother's name. Two of the questions complained of were: ''Where were you in May, 1923?'' and ''What time did you quit?'' The latter question had reference to his employment by the Spokane

International Railway at Millwood in 1923, the year of both the first and second marriages. Both of these questions were directly connected with defendant's direct examination. Another question complained of was this: ''You bought goods at Hinckley's store?'' Hinckley was a witness for the state; he testified that he kept a store at Millwood, and that in the summer of 1923 a woman with whom defendant was living, and whom the witness identified as the woman whose picture was state's exhibit ''C,'' testified to be that of Hazel Butler, came to his store from time to time and purchased groceries which she charged to G. Martinez; that defendant, who authorized the witness to sell her groceries on his credit, came in at intervals and paid the said account; and that the witness knew of no brother of defendant. The question complained of concerned the name defendant went under in the year 1923, and was connected with his direct examination.

[18] Appellant also complains of a question put to him by the prosecutor on cross-examination, in substance whether he did not tell one of the state's witnesses, late in the summer of 1923, that his wife Hazel had returned to the Yakima Indian Reservation. The question was not unrelated to defendant's direct examination, as counsel urges. Defendant testified in effect that he did not marry Hazel Butler. The question concerned directly his alleged marriage to the woman. The court, however, told defendant that he need not answer the question unless he wanted to, and defendant declined to answer, placing his refusal upon the ground that it might be self-incriminating. Appellant complains that the question prejudiced him in the eyes of the jury. This does not constitute reversible error. (17 C. J., p. 309, sec. 3655.)

[19] Appellant complains of the overruling of his objections to two questions propounded to a witness for the state on rebuttal: ''In the month of May, 1923, did he (defendant) say anything to you about getting married?'' and ''Did he introduce the woman to you as his wife?'' Appellant contends that they were not proper rebuttal.

" . . . . Rebutting evidence is defined to be that which is given to explain, repel, counteract or disprove facts given in evidence by the adverse party. . . . . " (*People v. Page,* 1 Ida. 189.)

[20] Defendant on direct examination denied that he signed the marriage certificate of the first marriage, and on cross-examination said he was in Tacoma in May and June, 1923, and was not at Millwood, and did not live with an Indian woman there at that time. While objection was made to the question eliciting the latter statement, his answer had been made, and no motion was made to strike it. Both the questions related to the alleged first marriage, and tended to repel, counteract and disprove his testimony.

[21] The admission of rebuttal evidence is largely in the discretion of the court. (*State v. Gallagher,* 14 Ida. 656, 94 Pac. 581; 16 C. J., p. 868.) In this, the court did not abuse its discretion.

We have carefully examined the evidence and find it sufficient to support the verdict of the jury. This disposes of appellant's assignment of error in the refusal of the court to give an advisory instruction to acquit. (*State v. West,* 42 Ida. 214, 245 Pac. 85.)

[22] The court imposed upon the defendant a punishment prescribed under the act of 1905 defining polygamy, the sentence being "not less than two years and not exceeding five years" in the penitentiary. He having been charged with and convicted of bigamy, the court, if duly advised, would have sentenced the defendant to the penitentiary for a period of not exceeding three years. The correction of this error in this court will not prejudice the rights of the defendant, and it is within the province of this court so to do. (C. S., sec. 9086; *People v. O'Callaghan,* 2 Ida. 143, 156, 9 Pac. 414.)

The judgment will be modified to the extent that the defendant be and he is hereby ordered to be confined in the penitentiary for a "term of not less than one nor more than three years," the imprisonment to date from his "ad-

mission into said penitentiary." Otherwise the judgment is affirmed.

Wm. E. Lee, C. J., and Budge and Givens, JJ., concur.