[No. 26003.   Department One.   June 11, 1936.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE P.
SANDROS, *Appellant*.[1]

*Richard S. Munter* and *H. E. T. Herman,* for appel-
lant.

*Ralph E. Foley, Carl P. Lang;* and *C. C. Quacken-
bush,* for respondent.

GERAGHTY, J.—The appellant was convicted, by the
verdict of a jury, of the crime of perjury. A motion
for new trial was made and overruled, and judgment
entered upon the verdict, from which this appeal is
prosecuted.

The second amended information, upon which appel-
lant was tried, charged that, in a proceeding pending
in the superior court of Spokane county, involving the

[1]Reported in 58 P. (2d) 362.

execution of an instrument purporting to be the last will of Nellie Gunderson, deceased, the appellant appeared and was duly sworn as a witness, and that, upon the issues there involved, contrary to his oath, he swore, among other things, in substance and to the effect:

"(a) That defendant, George P. Sandros, and one C. H. Melson were at the apartment of Nellie Gunderson in the Lennox Hotel on the northwest corner of Riverside Avenue and Brown Street in the City of Spokane, Spokane County, Washington, on Friday, the 11th day of December, 1931, between three o'clock and four o'clock in the afternoon and then and there conversed with the said Nellie Gunderson;

"(b) That said C. H. Melson, after having been at the apartment of Nellie Gunderson in the Lennox Hotel on the northwest corner of Riverside Avenue and Brown Street in the City of Spokane, Spokane County, Washington, on Friday the 11th day of December, 1931, between three o'clock and four o'clock in the afternoon, left said apartment of Nellie Gunderson and ten or fifteen minutes later returned to said apartment of Nellie Gunderson with an instrument in writing for said Nellie Gunderson to sign;

"(c) That said Nellie Gunderson signed her name to an instrument in writing purporting to be a will in the presence of the defendant, George P. Sandros, and one C. H. Melson, at the apartment of said Nellie Gunderson in the Lennox Hotel on the northwest corner of Riverside Avenue and Brown Street in the City of Spokane, Spokane County, Washington, on Friday, the 11th day of December, 1931, between three o'clock and four-thirty o'clock in the afternoon of said date;

"(d) That defendant, George P. Sandros, and one C. H. Melson each in the presence of Nellie Gunderson and in the presence of each other, signed their respective names as witnesses to an instrument in writing purporting to be the will of Nellie Gunderson, at the apartment of said Nellie Gunderson in the Lennox Hotel on the northwest corner of Riverside Avenue and Brown Street in the City of Spokane, Spokane

County, Washington, on Friday, the 11th day of December, 1931, between three o'clock and four-thirty o'clock in the afternoon of said date; . . ."

whereas, in truth and in fact, the appellant and Melson were not in the apartment of Nellie Gunderson, as testified by him, and Nellie Gunderson did not sign her name to the purported will, in his presence and in the presence of Melson, and the appellant and Melson did not, at the time and place testified to, sign their respective names as witnesses to the instrument, in her presence and in the presence of each other; and

" . . . that the name, Nellie Gunderson, written on said purported will is not the signature of Nellie Gunderson, was not written by her and that said signature is false."

After the state had made its case in chief, C. H. Melson, the other witness to the will of Miss Gunderson, was called as a defense witness. He testified that, between the hours of three and four o'clock in the afternoon of the day of the execution of the alleged will, December 11, 1931, he was called by Nellie Gunderson to her apartment, by telephone; that, on going there, he found the appellant present; that Miss Gunderson asked the witness to prepare a will for her; that he made notes of the particulars and repaired to his own office to write the will; that he returned to the apartment and submitted the draft to Miss Gunderson; that she approved and signed it, and he and appellant signed it as witnesses, at her request, and in her presence. He testified that, after the will had been executed, Miss Gunderson told him to take it with him and bring it back the next day; that he put it in his pocket and took it with him; that, on returning to Miss Gunderson's apartment the next day, he was unable to deliver the will to her, and carried it in his pocket until the 17th or 18th of December, when he delivered it to Mr.

Gleason, Miss Gunderson having died in the meantime.

The witness was cross-examined by the prosecuting attorney as follows:

"Q. You are the same witness Melson that was on the witness stand here before lunch? A. Yes, sir. Q. Do you know Mrs. Hutchins that lives up at Post Falls, Idaho? A. I don't recall the lady. Q. I will ask you if you recall last April sometime whether you went up to a lady's ranch to discuss this case with her? A. I went up to Post Falls to see somebody there. I don't know what the name was. Q. Well, was it a lady? A. A lady. Q. Would you recognize her if you saw her? A. I don't believe I would because it was in the dark when I saw her. They had gone to bed and didn't want to talk very much. Q. She was in bed when you got up there? A. Yes. Q. Do you recall Mr. Holman that was with her there that evening? A. No, I do not. Q. Did you see a man around there? A. Well, there was a man in the house but he didn't come outside because they had gone to bed. Q. Do you recall telling Mrs. Hutchins on that occasion that this will was signed by Nellie in your office? A. No, I never told her nothing of the kind. Q. You didn't tell her? A. No, sir. Q. Do you recall on that occasion telling Mrs. Hutchins that you carried this will in your pocket for about three weeks? A. Never told her nothing like that. Q. Do you recall telling her that you discovered this will accidentally as you were going through your pockets? A. Never told her nothing like that, either. Q. Do you recall asking her if she would come down to see Judge Witt and swear that the signature on this instrument was Nellie's signature? A. Never, no, sir. Q. Do you recall that you told her you were a friend of Bill Gohl's? A. No, I didn't do that, either. Q. Wait until I finish my question. And that if Mrs. Hutchins would help you, that you would help Bill Gohl? A. No, I never made no proposition like that.''

Thereafter, Mrs. Hutchinson, the woman referred to, called by the state in rebuttal as an impeaching witness, was permitted to testify, over the objection of appellant:

"Q. Mrs. Hutchinson, calling your particular attention to sometime in April of this last year, do you recall seeing Melson at your place up at Post Falls? A. Yes, sir, he came to my place. Q. Was it in the daytime or nighttime? A. No, it was night. Q. About what time? A. Oh, it was probably about nine or a little better. I had retired. Q. Now, Mrs. Hutchinson, who else was there on that occasion. A. The man that farms my place. Q. What is his name? A. John Holman. Q. Was Mr. Holman where he could hear the conversation with Melson? A. He stood right back of me. Q. I will ask you, Mrs. Hutchinson, if C. H. Melson told you on that occasion, in April, 1934, at your home near Post Falls that Nellie Gunderson signed her will in his office? A. He did. Q. Did C. H. Melson on that same occasion tell you that he had carried this will of Nellie Gunderson in his pocket for about three weeks? A. Yes, sir. . . . Q. Did C. H. Melson on that same occasion tell you that he accidentally discovered this will in his pocket as he was going through his pockets? A. Yes, sir. Q. I will ask you, Mrs. Hutchinson, if on that occasion C. H. Melson requested that you come down to Judge Witt and swear that the signature on the will was her genuine signature? A. Correct. Q. Did C. H. Melson tell you on that occasion that he was a good friend of Bill Gohl's? A. Yes, sir. Q. And did C. H. Melson tell you on that same occasion that if you would help him in his case that he would help Bill Gohl? A. Yes, sir, he did."

John Holman, called as a witness for the state, testified, over appellant's objection, that he was at Mrs. Hutchinson's home at the time of Melson's visit, and corroborated her testimony as to the conversation with Melson.

The principal errors assigned by the appellant are based upon the reception of the testimony of Mrs. Hutchinson and John Holman. It is the contention of appellant that the examination of these witnesses violated the rule that a witness cannot be impeached by

the cross-examining party on a collateral matter elicited in his cross-examination.

The witnesses, Hutchinson and Holman, were called to discredit the testimony of Melson by showing that he had made prior contradictory statements.

■ "The fact that he has stated the facts differently shows either a failure of memory, that he has forgotten what he once knew, or else it shows a want of integrity, and either way it impairs the value of his testimony. The variant statement may have been made either before or after the witness testified. It is to be noted, however, that contradictory statements are admissible solely to impeach the witness, and for no other purpose. They are ineffective as direct and affirmative proof of the facts to which they relate. The presence of the party, whose witness it is sought to impeach, when the contradictory statements were made, is not necessary to make the statements admissible, since the purpose of showing them is not to bind the party but to impeach the witness." 28 R. C. L. 633; *State v. Whitelaw,* 163 Wash. 347, 1 P. (2d) 212.

This rule, however, is qualified by another, that the answer of a witness on cross-examination upon a purely collateral matter cannot be contradicted but is conclusive upon the party cross-examining him. *State v. Stone,* 66 Wash. 625, 120 Pac. 76; *State v. Carroll,* 119 Wash. 623, 206 Pac. 563; *State v. Joffery,* 129 Wash. 322, 225 Pac. 48; 6 Jones on Evidence, § 2399.

"The rule that, to be susceptible of contradiction by proof of inconsistent acts or statements of the witness, the particular testimony impugned must be material and accordingly not collateral to the principal issue, has been constantly reiterated and frequently applied. Some explanation of the rule is, however, necessary. The following is declared to be the test of whether an attempted contradiction is with regard to a collateral matter: 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?' The point is of im-

portance, for it has often been held that impeaching a material witness on an immaterial matter is reversible error on the ground that showing the jury that one has testified falsely regarding an immaterial matter is likely to cause them to believe that such person testified falsely in regard to material matters." 6 Jones on Evidence, § 2400.

■ "The test as to whether a matter is collateral within the meaning of the rule is this: that the cross-examining party may be entitled to prove it in support of his case." *State v. Stone, supra.*

Now, applying this test, what was the issue with respect to which the relevancy and materiality of the impeaching testimony were to be determined? Was the issue, as contended by the appellant, merely the making of prior inconsistent declarations by Melson; or, was it the matter about which the alleged declarations were made, namely, the circumstances attending the execution of the will? We are of the opinion that the admissibility of the testimony is to be determined by its materiality and relevancy to the latter issue, and, as such, the testimony was not collateral.

Melson testified that, on the afternoon of December 11, 1931, he was called to her apartment by Miss Gunderson and asked to prepare a will for her; that he did so and she signed the instrument in the presence of himself and the appellant, who signed as witnesses; that he carried the will in his pocket until the 17th or 18th of December, that is to say, for six or seven days after its execution. Miss Gunderson died on the 14th of December, or the third day after the alleged date of the execution of the will.

The contention of the state was that the will was a forgery and was not executed at the time and in the manner testified by Melson. His statement to Mrs. Hutchinson that he carried the will in his pocket about

three weeks was material to the issue involved in the trial, since if he carried the will in his pocket for three weeks prior to the 17th or 18th of December, the document must have been in existence two weeks prior to the date on which it purports, on its face, to have been executed, and on which the witness testified it was executed. The witness, Melson, testified that the will was signed by Nellie Gunderson in her own apartment; Mrs. Hutchinson testified that he stated to her that it was signed in his office.

That part of the impeaching testimony detailing Melson's alleged effort to induce Mrs. Hutchinson to go before Judge Witt and testify that the signature on the will was the genuine signature of Miss Gunderson and that if the witness would help him, Melson, in the case, he would help Bill Gohl, was material and relevant and, therefore, not collateral, because it tended to prove Melson's interest and bias by showing that he sought to induce Mrs. Hutchinson to testify to the genuineness of Miss Gunderson's signature by offering to help her friend, Bill Gohl.

"The county attorney was permitted, over the defendant's objection, to testify that defendant's mother attempted to bribe him, and induce him to so fix the papers that her son might get out. The objection was that the evidence was irrelevant and incompetent, and that the state is bound by the evidence of the mother, and cannot contradict it as to irrelevant matter called out by it. It may be conceded to be the general rule that, if a witness is cross-examined on a matter collateral to the issue, his answer cannot thereafter be contradicted by the one drawing out such collateral matter. *Swanson v. French*, 92 Iowa, 695 (61 N. W. Rep. 407). The matter inquired about in this case, and as to which it was sought to contradict the mother of defendant, was not irrelevant or immaterial. Surely, it is competent to show, under such circumstances, that

the witness had virtually attempted to bribe the prosecuting officer, and thus to interfere with the due administration of the criminal law, and such fact may be shown in contradiction of the testimony of the witness, drawn out by the state in cross examination. It is said in Bradner on Evidence (page 20, chapter 2, section 18): 'It is not collateral, but relevant to the main issue, to inquire into the motives of a witness; and a party who examines him in regard to them is not bound by his answers, but may contradict them.' *State v. Patterson,* 2 Ired. 346; *Morgan v. Frees,* 15 Barb. 352; *Newcomb v. State,* 37 Miss. 383; *Atwood v. Welton,* 7 Conn. 66; *People v. Austin,* 1 Parker, Cr. R. 154." *State v. McKinstry,* 100 Iowa 82, 69 N. W. 267.

See, also, *Richardson v. State,* 90 Md. 109, 44 Atl. 999.

Appellant assigns as error the giving of instruction No. 2, as follows:

"It is the law of this state that 'every person who, in any action in which an oath may lawfully be administered, shall swear that he will testify or depose truly, and who, in such action shall state as true any material matter which he knows to be false, shall be guilty of perjury in the first degree.'

"It is also the law of this state that every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he knows to be false."

The complaint is directed to the last paragraph of this instruction. The paragraph is a mere abstract statement of law, and its inclusion in the instructions could not possibly prejudice the appellant, in the state of the record and in view of other instructions which charged upon the specific issues of fact in the case. As was said in *Gabrielsen v. Seattle,* 150 Wash. 157, 272 Pac. 723, 63 A. L. R. 200, the giving of a mere abstract instruction, correct in principle, is not ground for reversal unless its tendency is to confuse or mislead the jury. There is nothing in this instruction

which could have a tendency to confuse or mislead the jury.

The judgment will be affirmed.

MILLARD, C. J., MITCHELL, STEINERT, and TOLMAN, JJ., concur.