[No. 26855. Department Two. December 6, 1937.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER
JOHNSON *et al., Appellants.*[1]

*Oliver R. Ingersoll* and *P. C. Kibbe,* for appellants.
*Smith Troy, John S. Lynch, Jr.,* and *E. A. Philbrick,*
for respondent.

STEINERT, C. J.—An information, filed by the prose-
cuting attorney of Thurston county, charged the de-
fendants therein named with the crime of burglary
in the second degree. Upon arraignment, the de-
fendants pleaded not guilty. Trial by jury resulted
in verdicts of guilty, and from judgments of convic-
tion and sentence the defendants have appealed.

The principal, and in this instance the determina-
tive, question presented by the assignments of error

[1]Reported in 73 P. (2d) 1342.

arises out of the admission by the court of certain evidence concerning a matter which the appellants contend was a collateral issue. Before addressing ourselves to that question, however, we shall give a general statement of the primary facts of the case according to the evidence of the respective parties.

The evidence adduced by the state in support of the charge was substantially as follows:

Miss Janet Dewhurst, a teacher in Seattle, owned a summer cottage situated on the bay at Gull Harbor in Thurston county. During the winter months, the cottage, although furnished, was not occupied. During such periods, Mr. V. W. Ferrero, who lived near by, acted as caretaker. The cottage was improved with a burglar-alarm system so arranged and installed that, when any of the doors or windows of the building were forced open, an alarm would sound in the Ferrero home.

On or about January 7, 1937, Mr. Ferrero had been at the cottage and had seen that the doors were locked and the windows tightly closed. He had also observed that the house and its contents were in good order.

On January 10, at about 4:30 p. m., the alarm sounded, and Mr. Ferrero, armed with a gun, and accompanied by a neighbor, approached the cottage. He found the front door open and its lock broken. At Ferrero's command appellant Pete Johnson emerged from the cottage and was immediately taken into custody and searched. The appellant Madeline Johnson was found inside the cottage and was likewise taken in charge and searched. At the same time, it was observed by Ferrero that the cottage had been completely ransacked. All of the clothes had been taken out of the dresser, and a part of them, together with some shoes and a blanket, had been strewn about the floor, and the rest bundled up and stacked as though

intended for removal. Mrs. Johnson had on a pair of mittens belonging to Miss Dewhurst.

Upon interrogation, appellants stated that they were hungry and had gone into the cottage to look for something to eat. No food, however, had been touched. Appellants were taken to Ferrero's home and, while there, Pete Johnson produced a pair of pliers, and, on handing them to Mrs. Ferrero, said, "Will you take these pliers and not turn them in? I am in deep enough as it is." Appellants were then brought to Olympia, where Pete Johnson was lodged in jail, his wife being permitted to go to her home.

The evidence in support of the defense was, in substance, as follows:

Appellants were married in 1935 and since that time have lived in Olympia, near Mrs. Johnson's parents. Mr. Johnson is engaged in the business of gathering, cutting, and selling drift wood which he collects along the beach and river banks. For some time prior to January 10, 1937, the house in which the Johnsons were living had been out of repair and they were seeking to rent a more suitable residence.

About noon of January 10, appellants made a trip from their home to the beach at Gull Harbor and there proceeded to salvage and pile a quantity of wood to be later cut and sold. Mrs. Johnson wore a pair of mittens which she had purchased at a department store.

While walking along the beach, they saw the Dewhurst cottage and observed that the front door was open. Thinking that the place might be for rent, they decided to go inside and see whether it was suited to their needs and, if they found it satisfactory, to communicate with the owner later. They had hardly got into the house, however, when, as suggested above, they were ordered out, by Ferrero, at

the point of a gun. During their brief stay inside, they had not touched any of the contents whatever. They denied that they had gone in for the purpose of looking for food.

Several witnesses corroborated appellants' statements that they had been trying to rent another house. Several other witnesses testified that appellants' reputation as law-abiding citizens and persons of veracity was good.

If this recital of the comparative evidence were all that was in the case, the only question before us would be whether or not the evidence was sufficient to warrant the jury in finding appellants guilty of the crime charged. The case, however, has another, and more serious, aspect.

Upon cross-examination of appellants, the prosecutor asked them whether, at the time that they entered the cottage, they knew who the owner was, also whether they had ever been at the cottage prior to that time and whether they had previously ever seen any of the things therein, to all of which they categorically replied in the negative. The prosecutor then entered upon a line of cross-examination of appellants tending to show that, in March, 1933, which was nearly four years prior to the commission of the offense with which appellants are now charged, Miss Dewhurst's cottage had been burglarized and a number of articles, including a green Kenwood blanket, had later been found by the police in the home of David Cody, who was Mrs. Johnson's father; that, at that time, Mrs. Johnson was unmarried and was living with her parents; that the green Kenwood blanket was in constant use in the Cody home until it was restored to Miss Dewhurst; and that it was the same blanket that was found on the floor of the cottage at

the time of appellants' apprehension therein on January 10, 1937.

To all of the questions along that line of cross-examination, appellants' counsel repeatedly and vigorously objected. The objections were overruled on the sole and specific ground that the questions were competent as affecting appellants' credibility.

In answer to the various questions thus propounded, appellants denied all, or any, incriminating knowledge of the prior offense alleged to have been committed by Cody.

Upon rebuttal, and in line with his announced purpose of impeachment, the prosecutor then produced a number of police officers who testified concerning the former crime and the finding of stolen property, including a green Kenwood blanket, in the home of David Cody at a time when both of the appellants were present. To clinch the matter, the prosecutor offered in evidence the record in the former case, including the information charging David Cody with having received a quantity of goods stolen from Miss Dewhurst and the judgment of conviction based on Cody's plea of guilt. What the prosecutor was seeking to prove by this evidence was that appellants did have prior knowledge of the cottage, its ownership, and at least a part of its contents. Over the strenuous objections of appellants' counsel, the rebuttal evidence was admitted by the court on the ground that it was proper evidence to impeach appellants' veracity.

The crucial question in the case now before us is whether the state's rebuttal evidence was admissible. The answer to that question depends upon the legal nature of such evidence, that is, whether it pertained to a material issue in the case or merely to a collateral matter.

The rule is firmly established in this state that

a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue. In such matters, a party cross-examining the witness is concluded by the answers given. *State v. Carpenter,* 32 Wash. 254, 73 Pac. 357; *State v. Schuman,* 89 Wash. 9, 18, 153 Pac. 1084, Ann. Cas. 1918A, 633; *State v. Carroll,* 119 Wash. 623, 206 Pac. 563; *State v. Nolon,* 129 Wash. 284, 224 Pac. 932; *State v. Joffery,* 129 Wash. 322, 225 Pac. 48; *State v. Spadoni,* 137 Wash. 684, 700, 243 Pac. 854; *State v. Sandros,* 186 Wash. 438, 443, 58 P. (2d) 362.

The test as to whether a matter is material or collateral, within the meaning of the rule, is whether the cross-examining party is entitled to prove it in support of his case. *State v. Stone,* 66 Wash. 625, 120 Pac. 76; *State v. Sandros,* 186 Wash. 438, 58 P. (2d) 362. In the case last cited, quotation was made from 6 Jones on Evidence (2d ed.), § 2400, wherein the following was declared to be the test: Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction? Such, also, seems to be the test recommended in 2 Wigmore on Evidence (2d ed.), 435, § 1003.

In the case at bar, there has never been any dispute that the appellants were found in the cottage at the time alleged in the information. The only question in dispute was whether the appellants had broken and entered the building with intent to commit some crime therein. So the question here is whether the state's rebuttal evidence was relevant to the issue of the existence or non-existence of criminal intent.

The fact that some one else had burglarized the same place four years before and that appellants were aware thereof and had seen some of the property then stolen was not relevant to the issue of criminal intent,

but was a wholly collateral matter. Previous knowledge of such facts would not tend to prove appellants' criminal intent and guilt in this case; nor, conversely, would absence of such knowledge tend to prove their innocence.

The evidence, being inadmissible, was manifestly prejudicial to appellants and constituted reversible error.

Appellants also assign error upon one of the instructions given by the court with respect to impeaching testimony. While the instruction is, in our opinion, in part subject to criticism, it did not constitute a comment on the evidence, which is the ground of appellants' exception thereto. Further reference to the instruction, however, is unnecessary, because it related to evidence which we have just held to be inadmissible.

For the error in admitting rebuttal evidence upon a collateral matter, the judgments are reversed and the cause remanded for a new trial.

MILLARD, BLAKE, and ROBINSON, JJ., concur.

BEALS, J. (dissenting)—I cannot follow the majority in holding that the admission of the evidence introduced by the state on rebuttal by way of impeachment constitutes reversible error. Appellants admitted entering Miss Dewhurst's cottage. They testified that they noticed the front door standing ajar, and entered the house with a view to renting it, if they found it suitable to their needs. They denied having ever before visited the cottage or seeing any of the articles of personal property therein.

This was not collateral to the case against appellants, but, in view of their testimony, it became an important part of the question which was being tried, to-wit, appellants' guilt or innocence of the crime with

which they were charged. The state, then, had the right to introduce evidence tending to prove that appellants had testified falsely in the particulars referred to.

The court told the jury that the evidence was admitted only for the purpose of enabling the jury to determine whether or not appellants told the truth when they stated that they were not acquainted with the premises. In my opinion, the state could have proved, as part of its case in chief, that appellants were acquainted with the premises in which they were found, and had seen the articles of personal property therein contained. · In any event, in view of the testimony of appellants, the state had the right to show that appellants had not told the truth on such an important and material issue.

I Wharton's Criminal Evidence (11th ed.), § 358, lays down the following rule:

"It sometimes happens in a criminal trial that the case, as made by the prosecution, is not denied by the defense, but the endeavor is made to avoid a conviction by introducing a special or affirmative defense. In replying to such a defense, it may happen that the facts shown by the prosecution in rebuttal discover another crime, and, of course, the same discrimination must be exercised as to its admissibility as if it had been offered to make out the case in chief against the defendant. . . . Another defense frequently raised is accident, or · mistake. Now, accident, or mistake, considered with regard to crime, is the exact reverse of intent, the absence of one being indubitable proof of the presence of the other. As a consequence of the nature of this defense, evidence that goes to prove intent on the part of the accused is admissible in rebuttal, notwithstanding the fact that it proves another crime."

Such evidence would be no less admissible under the circumstances disclosed by the record herein.

Later, in § 1365 (vol. 3), we find the following:

"A witness may be contradicted by his inconsistent conduct or acts as well as by his statements. Thus, where a witness testifies to facts, his acts, showing his belief in a different state of facts, may be shown, and he may be cross-examined as to these acts; and where he does not admit the acts, they may be proved to contradict him by other witnesses. . . . Occurrences at which the witness was present may be treated under the same rules as apply to acts."

In my opinion, the evidence received was properly admitted, and the judgments appealed from should be affirmed. I accordingly dissent from the conclusion reached by the majority.