[No. 28775. *En Banc.* July 26, 1943.]

A. LeRoy O'Neil *et al.*, *Appellants*, v. Richard G.
Crampton *et al.*, *Respondents.*[1]

[1]Reported in 140 P. (2d) 308.

*LaBerge & Lyon,* for appellants.

*I. J. Bounds* and *Conklin & Delle,* for respondents.

GRADY, J.—This action was brought by A. LeRoy O'Neil and wife against Richard G. Crampton and wife to recover a sum of money which they claim was lost by plaintiff husband in games of chance in a cardroom operated by, and for the benefit of, the defendants. The case was tried before the court and a jury, and a verdict was returned for the defendants. Motions for judgment notwithstanding the verdict and for a new trial were denied by the court; and, from the judgment entered on the verdict, the plaintiffs have taken an appeal to this court.

In this opinion, we shall refer to A. LeRoy O'Neil as though he were the only appellant and to Richard G. Crampton as if he were the sole respondent.

The substance of the complaint, so far as need be considered, is that respondent operated a cardroom known as "The Turf," in which gambling games were played, and that, between certain dates, appellant played the games and lost a specified sum of money. The answer denied generally the allegations of the complaint, and set forth, by way of an affirmative defense, that respondent was the owner and proprietor of a cardroom, operated in connection with a cigar store and wine and beer parlor; that appellant, during the times mentioned in the complaint, played in gambling games at various places other than at the Turf, and that whatever losses he had were sustained at such

places and not at his place of business. The affirmative matter of the answer was denied by the reply.

■ At the threshold of the case, we are met with the claim on the part of respondent that, under Rem. Rev. Stat., § 5851 [P. C. § 9131-49] (Laws of 1879, p. 98, § 3), appellant cannot maintain an action to recover money lost at gambling. The section follows:

"All persons losing money or anything of value at or on any of said games shall have a cause of action to recover from the dealer or player winning the same, or proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

Respondent argues that the words "said games" referred to the gambling games set forth in § 1 of that act, p. 97, which section was expressly repealed by § 52 of chapter 249, p. 906, of the Laws of 1909, (now codified as Rem. Rev. Stat., § 2304) commonly known as the criminal code, and, therefore, § 5851 has no basis upon which to rest, as there are no gambling games defined by the statute to which it can now apply. A claim has also been made that § 5851 was impliedly repealed by § 218, p. 955, of the act of 1909 (Rem. Rev. Stat., § 2470 [P. C. § 8927]), which makes it a misdemeanor for one to play the gambling games involved here, for the reason that it would be inconsistent to assume that the legislature would make it a misdemeanor to play certain gambling games and, at the same time, retain a law giving such person a civil remedy to recover the money he lost while playing the prohibited games.

It seems to us, however, that, in determining what is meant by the words "said games" as used in § 5851, we should look to § 1 of the act of 1879, notwithstanding its repeal by the criminal code of 1909, because the act of 1879 has both civil and criminal aspects, and the repeal by § 2304 should be held to apply only to the latter. We think this view is justified for the following reasons:

 The title to the criminal code of 1909 is "AN ACT relating to crimes and punishments and the rights and custody of persons accused or convicted of crime, and repealing certain acts." Section 50, p. 902, of the criminal code (Rem. Rev. Stat., § 2302 [P. C. § 8737]) provides: ". . . nor does it repeal any private statute or statute *affecting civil rights or liabilities* not expressly repealed." (Italics ours.) Repeals by implication are not favored. Though repealing words may be absolute in themselves, they will be held to be qualified by the intention of the legislature as manifested in other parts of the same act. Repeals may be construed as qualified or partial. Resort to repealed and superseded statutes may be had in aid of the construction of a statute. *State ex rel. Swan v. Taylor,* 21 Wash. 672, 59 Pac. 489; *Howlett v. Cheetham,* 17 Wash. 626, 50 Pac. 522; 1 Lewis' Sutherland Statutory Construction (2d ed.), p. 570, § 293; *State v. Vosgien,* 82 Wash. 685, 144 Pac. 947; *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015; 1 Lewis' Sutherland Statutory Construction (2d ed.), p. 859, § 452; Endlich on the Interpretation of Statutes, p. 64, § 51.

 The general rule of law is that one cannot establish a right and invoke a remedy if he himself is a wrongdoer; and this rule has been applied to actions brought to recover money lost at gambling. By § 3 of the Laws of 1879, p. 98, the rule was changed so that such recovery might be had. This was a declaration of public policy based upon the idea that, if gambling is to be discouraged, one way in which it might be done would be to permit recovery by the loser and at the same time protect those inclined to gamble against their weakness and improvidence, notwithstanding that the loser was in *pari delicto* with the winner. The creation of such a statutory remedy is but an enactment of a rule of law, recognized by many authorities, constituting an exception to the general rule relating to illegal contracts and other illegal transactions where

one, in order to assert a claimed right, must establish his own wrong. The basis of these decisions is that not only is the individual protected, but it is also a protection to the public, which is even more important, and this would be made more effective by allowing a recovery. *Duddy-Robinson Co. v. Taylor*, 137 Wash. 304, 242 Pac. 21; 12 Am. Jur. 729, § 214; Restatement of the Law of Contracts, p. 1116, § 601.

The fact that, by statute, the loser in a gambling game is made a wrongdoer and subject to a criminal penalty should not affect the application of the rule announced in the foregoing authorities, for the statute is but another attempt to discourage gambling, and, whether one be a wrongdoer by statute or because he is a violator of a rule of public policy, cannot affect the principle that a higher public policy demands the protection of the public as well as the individual, all of which will best be served by permitting the recovery of money lost at gambling.

On the merits of the case, we are of the opinion that there is sufficient evidence in the record, if believed by the jury, to warrant a verdict for the respondent, and that the judgment should be affirmed unless one or more of the assignments of error by the appellant calls for a reversal. We shall discuss the assignments in substantially the same order as made.

On cross-examination of the appellant and by the direct testimony of witnesses, over the objection of appellant, the fact was developed that, during the times in question, appellant had played at gambling games at places other than the Turf and at which he had lost money. It is the contention of appellant that evidence of this character was wholly irrelevant and was an attempt to impeach him and his evidence by the use of collateral matter. The respondent contends that the evidence was admissible as defensive matter and for the purpose of impeaching the appellant on a material issue. The law on this subject is that a witness cannot

be interrogated with reference to matters irrelevant or collateral to the issue before the court and then be contradicted by the testimony of other witnesses or by other evidence in order that he and his testimony may be impeached. *State v. Sandros,* 186 Wash. 438, 58 P. (2d) 362; *State v. Johnson,* 192 Wash. 467, 73 P. (2d) 1342; *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691.

The question usually is whether the proffered evidence relates to collateral matters or is substantive evidence meeting that adduced by the adversary and tending to show its falsity or supporting the case of the proponent. If it falls in the latter category, it is relevant and admissible. The test as to whether the matter about which inquiry is being made is collateral is this: that the cross-examining party be entitled to prove it in support of his case. *State v. Stone,* 66 Wash. 625; 120 Pac. 76; *State v. Sandros, supra;* 3 Wigmore on Evidence (3rd ed.), p. 657, § 1003.

The appellant was claiming that he lost money at the Turf in a substantial amount. It was admitted that he did lose some money as claimed. The amount lost was in dispute. If it appeared to the jurors that, during the period of time within which appellant was playing and losing at the Turf, he played and lost at other places as well, this would aid them in determining whether all of the money he was seeking to recover from respondent, and for which he would be liable, was in fact lost at the Turf. This was direct contradictory evidence meeting that submitted by appellant on the main issue of the case. It went direct to the subject matter of inquiry. There was no error in permitting the cross-examination of appellant on this subject nor in permitting respondent to show by his witnesses such money losses.

It follows that the court did not err in refusing to give the jury appellant's proposed instruction No. 5, to the effect that, even though it might appear that appellant lost money at other places, such fact would

have no bearing upon his right to recover against respondent if it was also found that he had lost money at the Turf; nor was it necessary, as claimed by appellant, that respondent prove the amount of money lost by appellant in any one or all of the other places. The evidence was not adduced to establish an offset or counterclaim, but was for the jury to use in determining whether some of the losses claimed were, in all probability, sustained at such other places.

The appellant requested the court to instruct the jury to the effect that, as it was admitted that he lost money gambling at cards and dice at the Turf between the dates alleged in the complaint, it should find a verdict for him in such sum as was proved by a fair preponderance of the evidence he had lost in such games, and that it was not necessary for him to prove the exact amount of money lost, but, having proved the fact that he lost some money, the amount of such loss was for the jury to determine from the evidence; and, in determining such amount, in the event the jury should find that he did win from time to time, no deduction should be made by the jury for any amounts won by appellant.

The court instructed the jury that, if it found by a fair preponderance of the evidence that appellant had lost money while playing games with cards and dice at the Turf, it should find a verdict for the appellant for the amount of such losses; that, in determining the amount of recovery, if any, the jury must be satisfied and convinced by a fair preponderance of the evidence of the amount of such losses, if any, sustained by the appellant, and that it was for the jury to determine from the evidence such amount, if any; that, in determining such amount, in the event the jury found that he had won from time to time, no deductions should be made for any amounts won by appellant in any of the games; that, if the jury found a verdict for the appellant, it must be for such a sum as he had proved by

a fair preponderance of the evidence he had lost in the games between the dates alleged in his complaint; and that the jury was not permitted to speculate or guess as to the amount lost, if any, but was required to determine the same with reasonable accuracy and certainty from the evidence.

By these instructions, the court substantially complied with the requests of appellant, with one important exception, and that is the jury was not directed to find a verdict for appellant inasmuch as it was admitted that appellant had lost money at the Turf, the amount of which being for it to determine. The appellant is correct in his contention that, where a plaintiff either proves without dispute or it is admitted by a defendant that the plaintiff has suffered a loss or damage at the hands of the defendant, the jury should be instructed to find a verdict for the plaintiff; and it is error not to do so, assuming that the evidence as to the loss or damage is of such a character that the jury does not have to resort to guess or speculation. In such a case, the only duty the jury has to perform is to determine the amount of the verdict. But we think the error was waived by appellant, and that he is now in no position to complain in view of what later transpired after the instructions of the court were given.

Although the court instructed the jury that, in determining the amount appellant was entitled to recover, it could not take into consideration any amount he may have won at the Turf, the record shows that, during his argument to the jury, one of counsel for the appellant stated:

"If you believe that he did get cash that isn't shown by this exhibit (referring to Exhibit 4), I will authorize you to deduct it; and you have my consent to deduct the winnings as shown in this book and to disregard the instructions of the court in that regard, and you have Mr. O'Neil's consent and Mrs. O'Neil's consent to do that."

The amount appellant won at the Turf during the time in question was seven hundred eleven dollars. He testified as to losses he sustained, and supported his verbal testimony by a book account he had kept of losses at the Turf. He put in evidence a number of checks signed by him—three of which were payable to the respondent, seven checks payable to, and endorsed by; third parties, and one hundred and three checks payable either to cash or to appellant. All of the checks except four bear the endorsement of respondent.

It appears that, in some cases, appellant received cash or merchandise in whole or in part for the checks. It was admitted by appellant, and evidence was submitted, that he sustained losses at other places. The jury had the right to weigh this evidence and give such credence to the testimony of appellant as it deemed proper, and then determine the amount of money lost. It seems clear to us the jury considered that, in all probability, the winnings equalled or exceeded the losses, and, if they did, they would have been justified, in view of the statement of counsel, in returning a verdict for the respondent.

▮ Error is assigned, based upon misconduct of one of counsel for respondent. At various stages of the trial, and particularly while the appellant was testifying, one of counsel for respondent made objectionable remarks about or to the witness, made improper comments on the answers of the witness to questions propounded to him, incited a colloquy with appellant as he was leaving the witness stand, and applied an epithet to him during his argument to the jury, all being without justification. The court in each instance; when objection was made, either admonished counsel or instructed the jury to disregard the statement of counsel, and, in some instances, did both.

We have held that, where objection is made to acts of misconduct on the part of counsel, and, in response

thereto, the court takes the action the trial judge did in this case, and the misconduct is not of such character that it could not be cured by any instruction the court might give, a new trial will not be ordered by this court on appeal. *Wallace v. Babcock,* 93 Wash. 392, 160 Pac. 1041; *Tubb v. Seattle,* 136 Wash. 332, 239 Pac. 1009; *Colburn v. Great Northern R. Co.,* 166 Wash. 200, 6 P. (2d) 635.

In passing upon a question of this kind, the appellate court must, to a great extent, be guided by the action of the trial judge, who is able to observe any reaction of the jurors unfavorable to the complaining party by reason of the misconduct of counsel. When the trial judge denied the motion for a new trial, he evidently concluded that the misconduct of one of counsel for respondent had not affected the result arrived at by the jury, and we do not feel we should decline to accept the conclusion he reached.

The judgment is affirmed.

SIMPSON, C. J., STEINERT, BLAKE, ROBINSON, and MALLERY, JJ., concur.

BEALS and JEFFERS, JJ., concur in the result.

MILLARD, J. (dissenting)—The misconduct of counsel for respondents was prejudicial. The nature of this case is such that it was not possible to remove, by granting the motion to strike the many statements besmirching the reputation of appellant husband, from the minds of the jurors the unfavorable impressions they undoubtedly gained from such misconduct.

It is contrary to the concept of justice to permit those who prey upon the weak and contemptuously regard the answer given twenty centuries ago to the age-old query, "Am I my brother's keeper?" to capitalize man's instinctive repugnance to one who defaults a so-called "debt of honor" and/or merits the idiomatic designation of "welsher" as a defense to an action by a wife

and her children to recover the living of which the gambler unlawfully deprived them.

There was competent evidence which, if accepted by the jury as true (the jurors, not the court, are the triers of fact), would warrant a verdict for appellants. In the absence of prejudicial statements by counsel for respondents, the jury might have found in favor of appellants.

The judgment should be reversed, with direction to the trial court to grant a new trial.

September 13, 1943. Petition for rehearing denied.

