(No. 7241. May 14, 1945.)

STATE OF IDAHO, Plaintiff-Respondent, v. HORACE MUNDELL, Defendant-Appellant.

[158 P. (2d) 818.]

A. A. Merrill for appellant.

Frank Langley, Attorney General, and J. R. Smead, Assistant Attorney General, for respondent.

HOLDEN, J.—October 30, 1944, an information was filed in the District Court of the Ninth Judicial District in and for Jefferson County against defendant Mundell. The information charged:

"That said Horace Mundell *on or about the 2nd day of*

*June, A.D. 1944,* and prior to the filing of this information, and within the County of Jefferson, in the State of Idaho, then and there being, did then and there commit the crime of burglary in the first degree, committed as follows, to-wit: That the said Horace Mundell willfully, unlawfully, feloniously and burglariously did enter a certain Service Station situated in Menan, County of Jefferson, and State of Idaho, then occupied by Menan Cooperative Supply Incorporated, a corporation, in the night time, with intent then and there the goods, chattels and property of the said Menan Cooperative Supply Incorporated, a corporation, then and there in said Service Station being found, then and there feloniously and burglariously to steal, take and carry away, and the said defendant, Horace Mundell, did then and there commit grand larceny * * *" (Emphasis ours).

The cause was tried November 14, 1944. On the same day the jury, duly impaneled and sworn to try the cause, found the defendant guilty as charged in the information. November 20, 1944, judgment was entered on the verdict adjudging defendant guilty and fixing his punishment, from which he appeals. Numerous alleged errors are assigned. These will be discussed in the following order:

## ASSIGNMENTS NOS. 1 and 2.

(1) "* * * the State wholly failed to prove, in accordance with the allegations of the information, that on June 2, 1944, the defendant burglarized the service station in question," and further that:

(2) "The State wholly failed to prove the allegations of the criminal complaint in that they failed to prove that the crime was committed on June 2nd, 1944; but to the contrary proved that on June 1st, 1944, George Jenkins, Dale Woolf and Elbert Ritchie did burglarize said service station."

Appellant argues: "All of the State's evidence tends to show that the service station was burglarized on June 1st." "All of the State's witnesses testified that the crime was committed sometime before midnight on June 1st." And "the complaint alleges that the crime was committed during the night of June 2nd."

The information did not allege, as stated by appellant, "the crime was committed during the night of June 2nd." The information alleged, as will have been noted, that the crime was committed "on or about the 2nd day of June, A.D. 1944." It is not a fatal objection the evidence, conceding that to be true, shows the burglary was committed "sometime before midnight on June 1st" rather than on June 2nd, in this: that it is sufficient if the proof shows the commission of the crime at any time prior to the filing of the information and within the statute of limitations. We direct attention to Section 19-1314, I.C.A. (covering indictments) providing as follows:

"The precise time at which the offense was committed need not be stated in the indictment; but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the offense."

It being provided by Section 19-1204, I.C.A., that:

"The provisions of this code in relation to indictments, and all other provisions of law applying to prosecutions upon indictments, * * * shall in the same manner and to the same extent, as near as may be, apply to informations and all prosecutions and proceedings thereon."

In *State v. Maguire*, 31 Ida. 24, 30, 169 P. 175, we cited and followed *Commonwealth v. Briggs* (Mass.), 11 Met. 573, where the Massachusetts court held:·

" "* * * It is equally well settled, that when an offense is alleged to have been committed on a day specified, the day is a matter of form to lay the venue, and proof of the offense committed at any time within the statute of limitations will be sufficient to sustain the indictment, except where time enters into the nature of the offense.' "

## ASSIGNMENT NO. 3:

"The court erred in allowing the name of Charles Hardy to be endorsed upon information at the opening of the trial. * * *"

The record discloses upon the opening of the trial the prosecuting attorney moved the court for permission to endorse the name of Charles Hardy on the information

as a witness for the state and that the motion was supported by the affidavit of the prosecutor. Appellant objected "upon the grounds and for the reasons that the defendant has not had any opportunity, at all, of being apprised of this sudden motion. That pursuant to the statutes the name should have been placed on the information long ago. The state has had all summer in which to prepare this case and in which to interview these witnesses, and now at this last moment to come in and ask that a material witness be placed upon the information we feel is entirely in derelict of the statutes, and doesn't give the defendant a fair opportunity to be afforded the rights givn him under the statutes pertaining to the names of the state's witnesses being endorsed upon the information. We feel that it comes entirely too late, and it does not give the defendant a fair opportunity." The affidavit of the prosecutor is not in the record on appeal. Therefore, it is not made to appear what showing the prosecutor made, nor consequently, that the showing was insufficient.

Section 19-1202, I.C.A., provides:

"All informations shall be filed in the court having jurisdiction of the offense specified therein by the prosecuting attorney as informant; he shall subscribe his name thereto and indorse thereon the names of the witnesses known to him at the time of filing the same; and at such time before the trial of any case as the court may rule or otherwise prescribe, he shall indorse thereon the names of such other witnesses as shall then be known to him; provided, however, that the witnesses called by the state in rebuttal need not be indorsed upon the information."

As this court pointed out in *State v. Stewart*, 46 Ida. 646, 650, 270 P. 140, "the purpose of these provisions is to inform the defendant of the names of the witnesses who are to testify against him, so that he may have an opportunity to meet and controvert their evidence." Here, there was no showing whatever, either that appellant did not have ample time to meet and controvert the Hardy testimony, or that appellant was surprised.

Where, as above pointed out, the record is silent as to what showing the prosecutor made in support of his motion, "All presumptions are in favor of the judgment. . . and, unless it affirmatively appears from the judgment-

roll that there was failure in some vital process or requirement, the judgment cannot be questioned." (*State v. Miller*, 52 Ida. 33, 37, 10 P. (2d) 955).

Moreover, we held in *State v. Leavitt*, 44 Ida. 739, 748, 749, 260 P. 164, that: "An exception to, or assignment of error cannot be accepted as proof of facts therein alleged; there must be something in the record positively showing what the judge actually did or did not do. * * * In the absence of any such showing, a presumption must be indulged in favor of the trial court; * * *"

It appears from the record appellant had lived practically all his life in Menan, a small village in Jefferson County; that Hardy had also lived at Menan for more than fifteen years immediately preceding the burglary; that appellant himself testified he and Jenkins (one of his alleged accomplices) went to Menan, appellant says, on the afternoon of June 2nd, and while there bought five gallons of gasoline at the service station, later burglarized, either around midnight of June 1st or just after midnight June 2nd; it further appears from the record that Hardy (assistant manager) saw appellant in this service station at three different times in the afternoon preceding the burglary. Under these circumstances, can it be seriously contended appellant was actually surprised that the state sought to have Hardy's name endorsed on the information? At the time the motion to place Hardy's name on the information was presented to the trial court, as will have been noticed, appellant did not claim he was surprised nor did he make any showing of surprise, or that he was unprepared to meet the testimony of the witness Hardy, or that he was prejudiced. If appellant had made a showing of surprise, that by reason thereof he was unprepared to go to trial and had requested a postponement in order to enable him to meet the Hardy testimony, a very different situation would be presented. There being no counter showing, the trial court was compelled to pass on the matter on the showing made by affidavit of the prosecutor, which is not before us.

## ASSIGNMENT NO. 4:

"The court erred in allowing State's witness Woolf to testify as to a conversation he had with the State's

witness Jenkins, outside the presence of the defendant Mundell."

The record does not support appellant's statement that Woolf testified to a conversation had with Jenkins "outside the presence of the defendant Mundell." The record discloses the conversation occurred between Woolf, Jenkins and appellant Mundell. Thus showing the presence of Mundell at the conversation; in fact, the record shows appellant participated in the conversation.

## ASSIGNMENT NO. 5:

"The court erred in sustaining the objection made by the state, wherein Mrs. Mundell, wife of the defendant, was not allowed to testify as to a conversation she had with her brother, Elbert Ritchie, concerning his testimony in the trial of the case at bar."

On redirect examination of Elreta Mundell, wife of appellant, it appears she was asked the following questions and made the following answers:

"Q. Mrs. Mundell, I overlooked asking you in the outset if you talked to your brother (Elbert Ritchie) since this case has come up, in the last two or three days?

"A. Yes, sir.

"Q. Was it pertaining to his testimony at this trial?

"A. Yes, sir.

"Q. Tell what he said.

Mr. Hemminger: "We object to that as being incompetent, irrelevant and immaterial; a conversation she had with anyone about this trial; other than with the defendant, wouldn't be admissible.

The Court: "Sustained."

The purpose of this redirect examination is not clear. If the purpose was to impeach Elbert Ritchie by showing he had theretofore made statements to the witness Elreta Mundell, inconsistent with the testimony given by him upon the trial, then and in that case, a proper foundation was not laid by appellant while Elbert Ritchie was on the

stand. We direct attention to Section 16-1210, I.C.A., providing:

"A witness may also be impeached by evidence, that he had made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

On the other hand, if the purpose of the redirect examination of Elreta Mundell was not the impeachment of the state's witness Elbert Ritchie, then and in that case, it was not made to appear either by the redirect examination or by an offer of proof, in what respect, if at all, the conversation was either competent, material or relevant.

■ ASSIGNMENTS 6 to 14, inclusive. By these assignments the following questions are presented: that the trial court erred in permitting testimony of other and different crimes to be given; that the court permitted state's witness, Oscar Orstram, to testify over the objection of appellant, concerning a trip to Montana "wherein the state claimed that the defendant was implicated in another crime other than the one at bar," and that "the court abused its discretion in allowing the state to introduce evidence on rebuttal, which in reality was not rebuttal and had nothing to do with the facts of the case at bar and was wholly foreign thereto."

The record discloses the following direct examination of appellant:

"Q. Now, when did you go to Montana with those men (referring to Jenkins, Ritchie and Woolf, alleged accomplices), and why?

"A. It was the following Sunday morning.

"Q. And why did you go up there?

"A. Well, I put in my application as truck driver for the Blind Bull Coal Mine—I drove up there the year before, and it was awful stormy during this spring and they

couldn't get up there, and so during this time all these fellows was out of work—I had been working for Merrill brothers prior to this time, but they were out of work; and they asked me, or Elbert had talked about it, Elbert Ritchie, about going up to Montana looking for a hay job, getting some kind of job up there. Well, I told him we could go look for a haying job, and if I couldn't get my job with the Blind Bull Mine we could go up there and get a haying job. I stacked hay there for two years, in Montana.

"Q. Is that why you went up there, to line up a hay job, so when the hay was ready you could go back up there for that job?

"A. Yes."

Following that direct examination appellant was cross- examined as follows:

"Q. Now, you say that you saw these boys the following Sunday, that is, Dale Woolf, and Elbert Ritchie, and George Jenkins?

"A. Yes.

"Q. That would be on the fourth of June?

"A. Yes.

"Q. And they asked you to go to Montana with them?

"A. Yes sir.

"Q. What was the purpose of making that trip to Montana?

"A. To look for a job.

"Q. Who was looking for a job?

"A. I was.

"Q. Any of the rest of them?

"A. I suppose they was; they said they was.

"Q. They said they was going up there to look for a job?

"A. Yes sir.

"Q. Isn't it a fact that they went up there to dispose of some property that was stolen in Rexburg the Saturday night before?

Mr. Merrill: "Just a moment—

"A. I didn't know anything about that."

It will be noticed appellant himself first testified about and thus brought into the case the trip he said he, Woolf, Ritchie and Jenkins took to Montana "to look for a job." This court held in *State v. Hargraves*, 62 Ida. 8, 18, 19, 107 P. (2d) 845:

" 'The purpose of all cross-examination is to weaken or show the untruthfulness of the testimony of the party examined or the party's bias or prejudice.'

"* * * The rule would seem to be well settled that where a defendant in a criminal trial voluntarily takes the witness stand in his own behalf he is subject to the same rules applicable to other witnesses and may be cross-examined in regard to all matters to which he has testified on his direct examination or connected therewith. In *State v. Martinez*, 43 Ida. 180, 195, 250 P. 239, the rule is stated:

" 'The provision of article 1, section 13, of the constitution that "no person shall. . . be compelled in any criminal case to be a witness against himself," expressed also in C.S. sec. 8623 (I.C.A., sec. 19-108), is subject to the rule that one who has voluntarily made himself a witness in his own behalf is subject to the same rules of cross-examination that apply to all other witnesses (*State v. Gruber*, 19 Ida. 692, 115 P. 1), and he may be so cross-examined as to any facts stated in his direct examination or connected therewith. (C.S., sec. 8034; I.C.A., sec. 16-1205).'

"See, also, *State v. Wilson*, 41 Ida. 616, 243 P. 359; *State v. Cox*, 55 Ida. 694, 46 P. (2d) 1093; *State v. Van Vlack*, supra; *State v. Smailes*, 51 Ida. 321, 5 P. (2d) 540; *State v. Silva*, 21 Ida. 247, 120 P. 835; *State v. Gruber*, 19 Ida. 692, 115 P. 1; sec. 16-1205, I.C.A.; *People v. Maughs*, 8 Cal. App. 107, 96 P. 407."

In *State v. Boykin*, 40 Ida. 536, 541, 234 P. 157, we held:

"It is well settled that any false statement made by an accused for the evident purpose of avoiding suspicion is admissible as a proof of guilt."

 But, appellant contends the state was bound by his testimony given on direct examination concerning the trip he made to Montana with his alleged accomplices, and the reasons therefor, and that he could not be impeached by the state by showing the falsity of his testimony in relation thereto, because he insists that whether he and his accomplices had committed another crime and had gone to Montana to dispose of the stolen property, was collateral to the issue of his guilt in the case at bar, citing and relying upon *State v. Kritzer*, 152 P. (2d) 967, 969. We quote the holding of the Washington court relied upon by appellant:

"In *State v. Johnson*, 192 Wash. 467, at page 471, 73 P. (2d) 1342, at page 1344, we recognized the rule that a witness cannot be impeached by the use of facts collateral to the issue, and then set forth the test to be used as follows:

" 'The rule is firmly established in this state that a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue. In such matters a party cross-examining the witness is concluded by the answers given. (Citing numerous Washington cases).

" 'The test as to whether a matter is material or collateral, within the meaning of the rule, is whether the cross-examining party is entitled to prove it in support of his case. (*State v. Stone*, 66 Wash. 625, 120 P. 76; *State v. Sandros*, 186 Wash. 438, 58 P. (2d) 362.) In the case last cited, quotation was made from 6 Jones on Evidence, 2d Ed., Sec. 2400, wherein the following was declared to be the test: Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction? Such, also, seems to be the test recommended in 2 Wigmore on Evidence (2d Ed.), p. 435, Sec. 1003.' "

However, notwithstanding the above quoted holding, the Washington court also held:

"The general rule is that, when one is on trial charged with a specific offense, evidence of the commission of

other crimes by him is not admissible, because such proof is not necessary and its only effect is to prejudice the jury against the accused by showing that he is predisposed to the commission of crimes. *However, there are exceptions to this general rule, and one of them is that, when the element of intent on the part of the accused is involved in the offense charged, evidence of other and related offenses having a bearing upon the one charged is then properly received.* (Also citing numerous Washington cases)." (Emphasis ours).

*Intent* being an essential ground or element of the crime charged against appellant (without proof of which appellant could not be convicted), the cross-examination objected to was admissible under the last above quoted rule announced in *State v. Kritzer,* supra, relied upon by appellant.

In *State v. Orr,* 53 Ida. 452, 459, 24 P. (2d) 679 (where it was objected, as in the case at bar, that the prosecution was permitted to call certain witnesses to testify to certain matters claimed not to be strictly rebuttal), this court quoted and adhered to the following rule announced in *State v. Ellington,* 4 Ida. 529, 43 P. 60:

" 'It is objected that the prosecution were allowed to recall certain witnesses to testify in regard to matters which it is claimed were not strictly rebuttal. This is a matter entirely within the discretion of the trial court, and is so made by statute. (C.S. 8941, subd. 4, now I.C.A., subd. 4, Sec. 19-2001). It would most certainly be a denial of justice to refuse to allow witnesses to be recalled on the part of a defendant on trial for a capital offense merely because the matters in regard to which they are to testify are not strictly rebuttal, although material, and the same rule should apply to the state.' "

See, also, *State v. Smailes,* 51 Ida. 321, 332, 5 P. (2d) 540; *State v. Martinez,* 43 Ida. 180, 196, 250 P. 239, and *State v. Waln,* 14 Ida. 1, 80 P. 221.

While not an assigned error, it is argued "that the testimony of the accomplice was not corroborated and that there was no evidence introduced by the state tending to show that the defendant was connected with the crime alleged to have been committed on June 2nd, 1944."

Lila Ritchie, a witness for the state, not an accomplice, testified:

"Q. Where were you on the evening of June first,—

"A. At home.

"Q. Nineteen, forty-four?

"A. At home.

"Q. Did you see Horace Mundell, and Dale Woolf, and George Jenkins, and your husband on that evening?

"A. I did.

"Q. About what time?

"A. It was in the evening; I don't know what time.

"Q. They were all over to your place?

"A. Yes.

"Q. And what time did they leave your place?

"A. I don't know that time.

"Q. It was along in the evening?

"A. Yes.

"Q. Did they all leave together?

"A. Yes.

"Q. Did you see the same men, Horace Mundell, your husband, Elbert Ritchie, Dale Woolf, and George Jenkins, on the morning of June second, Nineteen forty-four?

"A. I did.

"Q. Whereabouts?

"A. I seen three of them at our house.

"Q. Which three?

"A. Elbert, and Horace, and Dale.

"Q. That is Horace Mundell, and Dale Woolf, and your husband?

"A. Yes.

"Q. What time did they come in the house?

"A. I don't know what time it was.

"Q. Well, were you to bed?

"A. Yes.

"Q. Was it early in the morning, approximately?

"A. I imagine so.

"Q. The night was practically over?

"A. Yes sir.

"Q. And was Horace Mundell's wife staying with you that night?

"A. She was.

"Q. And you never saw Horace Mundell from the evening before until that next morning when the three of them came in there?

"A. That's right.

"Q. That is correct?

"A. Yes."

\* \* \* \*

"Q. Did they have any alibi as to where they had been that night?

"A. Just out.

"Q. Just out?

"A. Yes."

\* \* \* \*

"Q. Did you see them have any money, any of them?

"A. I seen Elbert have some.

"Q. Elbert Ritchie, that's your husband?

"A. Yes.

"Q. About how much did he have, do you know?

"A. Well, he had quite a bit, is all I know.

"Q. Currency?

"A. Yes."

This testimony shows: that on the night of June 1, 1944, appellant's wife stayed all night at the Ritchie home; that appellant Mundell, Ritchie, Woolf and Jenkins met there on the evening of that day; that thereafter, the same evening, all left together; that these same men, appellant, Elbert Ritchie, Dale Woolf and George Jenkins returned early the next morning, June 2, 1944; that they had no explanation as to where they had been other than they were "just out"; that one of these returning men, Elbert Ritchie, had quite a bit of currency. In addition to that, there is further evidence, independent of the testimony of any of the alleged accomplices, appellant was in the burglarized service station several times in the afternoon preceding the burglary, inferentially, under all the facts and circumstances, for the purpose of looking the place over in preparation of the commission of the burglary that was to and did follow that night. Of course, it was for the jury to determine whether appellant went to Menan on the afternoon preceding the burglary so that his father could help him "build a pick-up on the back end of this car that I tore down," taking Jenkins along with him, as he stated, or whether appellant went to Menan, taking Jenkins with him, to use the vernacular, to "case" the station, preparatory to burglarizing it that night. The jury very evidently did not believe appellant's explanation of the reason for his trip to Menan, or his explanation of the reason for his visits to the service station, at one time to borrow a "jack," on account of a "blow-out on the car," and at another to buy gasoline at "four or five o'clock that afternoon". The jury must have believed appellant went to Menan and made the visits to the service station, he himself testified to, for the purpose of "getting the lay of the land" as an aid in the commission of the burglary. In *State v. Orr,* 53 Ida. 452, 460, 24 P. (2d) 679, we held:

"Under section 19-2017, Idaho Code Annotated, the corroborating testimony need only *tend* to connect the defendant with the crime. It may be slight (*People v. McLean,* 84 Cal. 480, 24 P. 32) ; and it need only go to one material fact (*State v. Knudtson,* 11 Ida. 524, 83 P. 226) ; and the cor-

roboration may be entirely circumstantial (*State v. Gillum,* 39 Ida. 457, 228 P. 334)."

In *State v. Gillum,* supra, this court pointed out:

"No general rule can be stated with respect to the *quantum* of evidence corroborating an accomplice's testimony which is necessary to warrant a conviction; each case must be governed by its own circumstances, keeping in view the nature of the crime, the character of the accomplice's testimony, and the general requirements with respect to corroboration. Where the circumstances point to the guilt of the accused, independent of the accomplice's testimony, such circumstantial evidence may be a sufficient corroboration of the accomplice's testimony to sustain a conviction. It is not necessary that the testimony of an accomplice be corroborated in every detail. Any corroborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt. (Citing numerous cases)."

And in *State v. Brown,* 53 Ida. 576, 585, 586, 26 P. (2d) 131, we again cited and followed *State v. Gillum,* supra. We also cited and followed *People v. Nikolich,* 93 Cal. App. 356, 269 P. 721. That court held:

" 'The law is well settled that the testimony of the accomplice need not be corroborated by direct evidence. The entire conduct of the defendant may be looked to for the corroborating circumstances, and, if from those circumstances the connection of the accused with the crime may fairly be inferred, the corroboration is sufficient.' "

It is argued, but not assigned as error, the state is bound by its evidence and where it is directly contradictory, the conviction cannot stand, citing *State v. Darrah,* 60 Ida. 479, 92 P. (2d) 143 and *State v. Haynes,* 64 Ida. 627, 135 P. (2d) 300, burglary cases.

In these cases, each defendant was found in the possession of the property taken, and in both cases possession of the property was explained. In the first case, the state introduced and relied upon a statement made by defendant Darrah which reasonably explained his recent possession of the property taken and this court held the burden

was then upon the state to show that such exculpatory evidence was false. In the second case, it appears the state "produced positive evidence that the police officers took the billfold (claimed to have been taken at the time of the entry) from appellant (Haynes) March 22, six days before the crime was alleged to have been committed and, so far as the proof shows, entry effected, i.e., March 28, and retained it in their possession up until the time of the trial." We followed *State v. Darrah,* supra, holding "The state is bound by its evidence and where it is directly contradictory, as herein, a conviction cannot stand."

In the case at bar, appellant Mundell was not found in the possession of any of the property taken from the service station at the time the burglary charged here was committed; therefore, could not and did not make any explanation concerning the possession of that property, recent or otherwise, which the state could have adduced; nor did the state adduce any evidence of that character, so that the rule held in *State v. Darrah,* supra, could not and does not apply.

Furthermore, we have not been able to find and appellant has not directed our attention to any evidence adduced · by the state which would exculpate him or contradict other evidence adduced by the state showing appellant to be guilty. Hence, appellant Mundell does not bring himself within the rule he seeks to invoke.

Finally, in *State v. Hunsaker,* 37 Ida. 413, 418, 216 P. 721, this court held:

"It is a well-settled rule of criminal procedure that an appellate court will not presume error, but that the record must affirmatively show that error was committed, of a character sufficiently serious to warrant a reversal." (Cited, adhered to and followed in *State v. Dawson,* 40 Ida. 495, 499, 235 P. 326).

In fact, this court has uniformly held, regardless of the form in which the question was presented, since *State v. Hurst,* 4 Ida. 345, 39 P. 554 (decided in 1895), that the burden of showing error on appeal, after conviction, is upon defendant. (*State v. Haverly,* 4 Ida. 484, 42 P. 506; *State v. Corcoran,* 7 Ida. 220, 61 P. 1034; *State v. O'Brien,* 13

Ida. 112, 88 P. 425; *State v. Lottridge*, 29 Ida. 53, 155 P. 487; *State v. Marks*, 45 Ida. 92, 99, 260 P. 697.) This rule appears to be generally recognized. In 24 C.J.S., Sec. 1849, pp. 707, 708, 709, 710, it is stated:

"As a general rule the appellate court, in the absence of a showing in the record to the contrary, will indulge all reasonable presumptions in favor of the correctness of the judgment or rulings of the trial court, and will presume that the proceedings had in the progress of the cause were regular and free from error. In order to overcome such presumption, error must be affirmatively shown by the record; and the burden of showing prejudicial error is on the party, usually accused, complaining of the error."

In the case at bar, then, the burden was upon appellant to show error "sufficiently serious to warrant a reversal." He failed to make such a showing.

The judgment of conviction is affirmed.

Budge, J., and Buckner, D.J., concur.

GIVENS, J., dissenting.—While under Section 19-2017 I.C.A. corroborating testimony need only *tend* to connect the defendant with the crime, it must do so independently of the testimony of the accomplices. The only testimony held to be corroborating is that defendant was at the garage in the afternoon and early evening and he came home at the same time the accomplices did that evening and one of them, not defendant, had some money. Independent of the testimony of the accomplices, these incidents can only give rise to an inference of guilt if it is first assumed that the defendant is guilty and then justification for so concluding be sought. Such evidence is wholly insufficient as it does not in and of itself tend to connect the defendant with the crime in any way. The connection is based wholly and solely on the testimony of the accomplices. The case should therefore be reversed and remanded for a new trial and if no additional evidence is available, dismissed.

Ailshie, C.J., concurs in this dissent.